Court Access, Religious Programs, VISITATION, GRIEVANCES, and Miscellaneous Programs.

1. Mail

Mail services are provided by Aramark. Policies are not clear on what is permissable mail and numerous arbitrary decisions reject mail constantly. When mail is rejected, neither sender nor recipient is permitted to challenge the decision to any DACDC authority; ARAMARK has sole control. A cursory review demonstrates the "Mail Rejection Notice" does not have options for review, appeal, hearings, etc as required by numerous judicial holdings. Despite clear case law to the contrary, DACDC does not permit newspapers. Arbitrary rules actually create more work such as: photo limits per envelope, 50 pages per envelope, no colored ink or pencil writings, etc. This is a basis for suit (see Barela suit).

As for mail services for inmates to send mail, there are none. No weighing services exist and only a single stamp denomination is sold. Inmates cannot send out certified, registered, odd shaped, and other types of mail at all, even though the service could easily be offered. Indigent inmates are only permitted

a single stamped envelope and two pieces of loose-leaf paper twice per month; no exceptions.

Finally, Special Mail is not honored for mail to and from "Executive and Legislative Branches" and is a false statement.

2. Telephones

Telephone service is provided by Legacy Phone Services and maintained on-site by Sam Montoya. Phones have a lot of trouble connecting and are in constant need of repair. The entire phone system breaks down regularly. There are no true collect calling options. Recipients of collect calls must have a valid credit card which is not very common among the Dona Ana County demographic. Indigent inmates thus cannot arrange for bail without their family/friends having a credit card to begin.

Pod phones do not have any seating and inmates must stand or sit on the floor for the duration of calls. All phone calls must generally be made from Pod phones which is generally very loud. There is no way to privately call attorneys as either inmates are always close by and calls made through the Programs

Specialists are fully monitored no matter what.

DACDC does not use approved phone lists which permits easy theft of inmates' phone debit accounts. This is a common problem and inmates have extreme difficulty having the Phone pin changed. Approved call lists would alleviate and entirely end this ~~xxxx~~ destructive problem.

3. Court Access

There is no law library at DACDC. The only legal book available was called a "New Mexico State Law Code" book. While a "book" does exist, it is only an <u>index</u> of state statutes. Inmates can ask for the statutes to be printed but must pre-pay .50 cents per page for copies, regardless of indigency. No other legal materials are available. Indeed, inmates cannot even get a copy of the US or N.M. Constitutions.

Copies of other Court documents cost $1.00 per page regardless of indigency. Only "flex pens" are allowed. No typewriters available. Pursuant to numerous judicial opinions, these egregious errors must be fixed rapidly.

4. Religious Programs

DACDC employs two facility Chaplains and both are of Christian faith. The Chaplains have an office stocked with books; greater than 95% of the literature in this office are Christian based. As mentioned in the Food Services section, the facility does not actually offer true religious diets. There have been numerous complaints that DACDC is a "Christians-only" facility. There is no doubt, DACDC does not comply with any religious laws. No religious materials are reasonably available (prayer oil, kufi, Quran, prayer rug, crosses, rosary, prayer schedules) nor are there reasonable opportunities for group worship (ie. Jum'ah) except for Christian inmates. Christian inmates are offerred regular bible study and at times given feature length films (ie. The Passion of the Christ) which are never secularly offerred nor for other faiths. DACDC clearly violates the Religious Land Use of Institutionalized Persons Act (42 USC 2000cc), the First Amendment to the U.S. Constitution, and Article II, Section 11 of the N.M. Constitution. Indeed, Religious issues are a major component of the Barela Suit. It is appalling this issue is a major point for Inmates but totally ignored by Global and the Commission.

5. VISITATION

Visitation is only conducted via video. While this may seem to reduce the introduction of contraband, it is not sufficient for long term confinement. DACDC may want to believe they only do short-term housing, but in reality does not.

Sadly, visits are constantly cut short due to mechanical issues or delays in officers allowing entry into the visitation areas. DACDC could ~~reconsider~~ incentivize good behavior by offering window visits or ~~contact~~ contact visits after a substantial amount of clear conduct. Indeed, visitation is a major component of crime reduction after release.

Visitors constantly complain that the visitation area is dirty, has no water available to drink, and does not have seating for those in line. Visitors further complain that officers are rude and unhelpful thus creating an air of superiority over the public. Indeed, DACDC is a publically owned entity and only operates at the consent of those persons who vote and pay taxes; the visitors.

Improving the one place the public routinely accesses would certainly improve the overall public perception

pg 17 of 26

of DACDC.

Further, a mere thirty minutes per week is wholly insufficient for confinement greater than six months. A possible solution could be a single thirty minute guaranteed visit, with incentivized opportunities to gain extra visitation (ie. 3 months with no disciplinary reports results in two weekly visits or one "window visit"). Some systems use points accrued.

While discussed previously, ATTORNEY visitation practices represent supreme and urgent Constitutional questions. DACDC has a primary population of persons accused of crime and are not convicted as a matter of law. Those inmates (ie. pretrial inmates) have an unqualified right to meet with legal counsel in preparation of their defense; that is guaranteed by the Sixth Amendment. Putting up barriers and forcing persons to communicate over mechanical and potentially recorded/monitored phones is a gross violation of this right. Indeed, at least one petition for a Writ of Habeas Corpus has been submitted and "accepted for filing" for exactly this problem (see: STATE v. Mathew Sanchez (Sanchez v. Barela), D-307-CR-2011-1015 (3RD DISTRICT)(Beyer, D.J.)). It is imperitive the ATTORNEY visitation scheme at DACDC be fixed

post-haste to provide: contact visits, fully sound-proofed visitation areas, cease using mechanical recording equipment, and have attorney visitation available 7 days per week. It should be noted that using mechanical phones for attorney communications violates the Federal Wiretap Act (18 USC 2510, et seq.); even in the jail setting.

6. Grievances

The detainee handbook explains there is a grievance procedure available to detainees. However, it is only one in name and not in practice. When writing a grievance, the detainee is never told who responds (which is usually the unit supervisor), the Appeal option is not properly available, officers are given grievances written against them, Chris Barela (Director) is never involved in grievance decisions, and there is no Grievance Coordinator to investigate the veracity of a grievant's claims. The grievance process must be overhauled by having an employee dedicated to investigation and disposition and futher develop a fail safe appeal process to the warden/director.

7. Miscellaneous Programs

This section will evaluate the following: educational

programs, rehabilitation programs, recreational programs, and exercise programs:

a. Educational Programs

DACDC does not have any educational programs. Persons wishing to further their education cannot do so in any way. Inmates also cannot access any correspondence programs, even if they are willing to pay, because books are hardcover or come in binders. It is well known that education programs while incarcerated are very successful at recidivism reduction. Further, development and/or retention of critical thinking skills permits inmates to set positive goals, reduce depression, and constructively occupy time.

b. Rehabilitation Programs

DACDC does not offer any form of rehabilitation programming such as: Alcoholics Annonymous, Narcotics Annonymous, Anger Management, Social Anxiety Management. It should come as no surprise, but alcohol and drugs account for greater than 50% of all incarcerations nationally. Indeed, alcohol and drugs account for greater than 90% of all precursors to criminal activity. What is a surprise is the utter lack of voluntary style programs

pg 20 of 26

with proven effectiveness at DACDC.

The Counseling program hardly covers these issues. Counselors spend as little time as possible with inmates, leave their doors open, and generally just ask if the inmate feels fine or not. "Treatment Plans" have no forethought of the actual needs of the inmate and only concentrate on adjusting to carceral life.

Dona Ana County will never achieve its "Goal and Guiding Principle 5" that promises the "effective reduction of serious crimes" (Contract, Section II at 1) so long as it fails to offer any rehabilitation programs in its Detention Facility.

c. Recreational Programs

DACDC does not provide any Recreational Programming. While inmates can buy playing cards, chess, and checkers, there is nothing else. Despite having the ability to do so, DACDC does not offer any feature movies on the television. DACDC also does not permit inmates to: purchase radios with headphones, access microwaves, have ice, or use radio transmitters on the televisions. While by no means required, having proper recreational

activities reduces boredom and encourages good behavior. Indeed, numerous facilities set up contests for inmates to win prizes (drawing contests to pick handbook artwork, "Spades" or Pinochle Tournaments). Generally the prize is commissary money or special meals from out-of-facility restaurants (McDonalds, Burger King, etc). These are great ice breakers for inmates to get to know each other, develop positive interpersonal relationships and help encourage good behavior and recidivism reduction.

An increase in Recreational Opportunities also creates the potential for added revenue (ie. Radios and batteries) while also creating and keeping a happier and safer environment for inmates. Given the US Marshals pay $62 per day per bed and keeps over 250 inmates at DACDC, some investment should be made to this category. This would not only reduce the potential liability risks to DACDC but to its customers (The US Marshal Service).

d. Exercise Programs

Inmates are given only limited opportunity to access the outdoor recreation yard, even less opportunity for sunlight, and yet even less exercise opportunity. Global

noted they could not locate any policy about this and recreation clothing but utterly failed to investigate and report as Contractually obligated.

Inmates are given an average of 2.5 hours per week access to the outdoor yard. The yard is very small and only has a pull-up station. Sadly, there is no set schedule for yard times and officers bring inmates so early sun access is virtually nill. The walls are roughly 40 feet high, and the total yard is roughly 400 square feet of useable space. No jogging areas are provided.

Inmates are not permitted any exercise clothing in any capacity and must wear their single uniform while exercising. Because there is a fence barrier to create two yard areas, 50% of the yard does not have toilet or water access.

Inmates are not permitted to exercise at all in the dayrooms. There are countless published judicial opinions that address these precise issues and easily inform that DACDC is not providing Constitutionally worthy exercise opportunities and faces enormous liability for this deliberate indifference to inmates' health.

G. SUICIDE PREVENTION

Despite a clear contractual promise to do so, Global did not offer insight into this very important issue (see Contract, Section II at 3, para 7).

DACDC over-utilizes a "Padded Cell" thus causing potentially suicidal inmates to not disclose suicidal ideations. Officers are not approachable and commonly push claims to the side. The padded cell is dirty and requires inmates to be nude save a quilted smock that cannot be tied. Only two pods have any top tier protection to prevent "jumping".

DACDC is insensitive to people who claim past history of suicide attempts or ideation. Indeed, Mr Khan told intake nurses several times and wasn't evaluated by mental health for over two years and he had to ask for that evaluation. (See Barela Suit).

H. P.R.E.A

Global did an excellent job evaluating this aspect of DACDC and it obviously needs to be fixed.

It should be noted that when Mr Khan made

a PREA claim, he was not offerred medical care nor mental health assistance. Instead, he was met with incredulity and even told "being the victim could affect your future federal placement." Capt Porter told this false claim to Mr Khan to justify not taking further action. Mr Khan intends to litigate this issue.

VI. <u>Objections to the walk-through Inspection</u>

Global conducted on-site inspections on February 8-12, 2016. Apparrently, they interviewed staff and inmates Global did not conduct a proper unbiased survey of responses but instead just asked random questions. For $50,000 a random sample survey should have been conducted of: inmates, staff, contractors, volunteers and visitors. Each group should be guaranteed confidentiality and protection from rebuke/reprisal. A survey to which superiors could not interfere that gets dropped in a lock box would allow problems to surface. Officers are terrified they will lose their jobs and inmates are terrified they will lose the few privileges they recieve.

A fill-in survey with a scale asking all the same questions to all persons would have revealed problems not on the forefront of thought for persons when pressed in person and permits quantatative data acquisition

that remains useable over time.

As it stands now, Dona Ana County is not committed to fixing the problems at DACDC given the sham inspection it allowed.

### VII. Response to Global's Report

Global released the report dated February 29, 2016. Captain Hooser knows of the report as an IPRA request was fulfilled by Captain Hooser for the report's release. DACDC has implemented NO CHANGES as of June 15, 2016 and none seem to be in the works. This is further evidence Dona Ana County used this contract as a $50,000 pacifier and has no real intention of fixing all the problems at DACDC.

### VIII. Declaration of Author

ERIK KHAN, pursuant to 28 USC 1746, declares that the information contained herein is true and correct under the penalty of perjury.

_[signature]_                                June 15, 2016

ERIK KHAN #1312105                           1850 Copper Loop
                                             Las Cruces, NM 88005

KHAN, ERIK #131205
1850 Copper Loop
Las Cruces, NM 88005
(Khan v. Barela 15-CV-1151)

Clerk of the Court
US District Court
100 N. Church St
Las Cruces, NM 88005

RECEIVED
U.S. DISTRICT COURT
LAS CRUCES, NEW MEXICO

JUN 27 2016

MATTHEW J. DYKMAN
CLERK