**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW MEXICO**

ERIK KHAN and All Others
Similarly Situated,

       Plaintiff,

vs.                                       No. CV 15-1151 MV/SMV

CHRIS BARELA, DOÑA ANA COUNTY,
ELVA BRIGHT, GORDON DEVEREAUX,
BILL STICKLES, JOHN DOE (FNU BEAM),
JUSTIN PORTER, CHERYL ROACH,
VICKI HOOSER, JASON DURAN, and
TAMMY RUSH (all sued officially and individually),

       Defendants.

### MEMORANDUM OPINION AND ORDER

**THIS MATTER** is before the Court under 28 U.S.C. § 1915(e)(2) and Fed. R. Civ. P. 12(b)(6) on pro se Plaintiff Erick Khan's Verified Civil Rights Complaint (Amended) ("Complaint"), which was filed on February 5, 2016. (Doc. 35.) Also before the Court are Mr. Khan's Pro Se Motion to Certify Complaint as a Class Action (Doc. 8), Pro Se Motion to Direct Service (Doc. 14), Motion for Preliminary Injunction and Temporary Restraining Order (Doc. 18), Motion for Order to Convert Documents (Doc. 44), and Motion to Compel Issuance of Summons (Doc. 48). For the reasons stated below, the Court (i) **DISMISSES** Mr. Khan's Complaint (Doc. 35); (ii) allows Mr. Khan forty-five (45) days from the date of this Order in which to file an amended Complaint that complies with this Memorandum Opinion and Order, and (iii) **DENIES** Mr. Khan's Motions (Docs. 8, 14, 44, and 48) as moot without prejudice for re-filing them in the event that he files an Amended Complaint within forty-five (45) days that complies with this Memorandum Opinion and Order.

1

# BACKGROUND

## I.      Procedural Background

### Authority for Sua Sponte Analysis and Dismissal

Before discussing the full procedural history of Mr. Khan's case, the Court describes the authority under which it dismisses Mr. Khan's Complaint. On January 4, 2016, Magistrate Judge Stephan M. Vidmar granted Mr. Khan's Pro Se Motion to Proceed In Forma Pauperis under 28 U.S.C. § 1915. (Docs. 3, 4, and 11.) On January 14, 2016, February 18, 2016, February 26, 2016, March 17, 2016, and July 1, 2016, the Court entered receipts showing that Mr. Khan made partial payments towards the filing fee in the respective amounts of $109.49, $40.00, $25.00, $25.00, and $150.51—all of which totaled $350, the amount which Magistrate Judge Vidmar had ordered him to pay. *See* (Doc. 11, Doc. 22, an unnumbered docket entry on February 18, 2016, Doc. 37, an unnumbered docket entry on March 17, 2016, and Doc. 56.) Under Section 1915(e)(2), "[n]otwithstanding any filing fee, or any portion thereof that may have been paid, the [C]ourt ***shall dismiss the case at any time*** if the court determines that . . . (B) the action . . . (ii) fails to state a claim on which relief may be granted[.]" 28 US.C. § 1915(e)(2)(B)(ii) (emphasis added). In other words, Section 1915 requires the Court to dismiss a case where, as here, the action fails to state a claim on which relief may be granted, even if the plaintiff has already paid the filing fee, as Mr. Khan did here. The reasons for the dismissal are below.

### Procedural History

Despite the fact that the Defendants were never served (Mr. Khan did move for service) and the Court has received nothing from the Defendants about this action, the record in this case is long. The case began on December 14, 2015, when Mr. Khan filed a Complaint (Doc. 1), Exhibits to Complaint (Doc. 2), and Supplemental Exhibits to Complaint (Doc. 7). A few weeks

later, on January 8, 2016, Mr. Khan filed another Addendum to Complaint (Doc. 15) and a Motion to Amend or Supplement Complaint (Doc. 17.). Mr. Khan's initial filings were voluminous: his Complaint (Doc. 1) and accompanying exhibits (Docs. 2, 7, and 15) comprised 359 pages. (*See* Doc. 31 at 2.) On January 27, 2016, Magistrate Judge Stephan Mr. Vidmar entered an order striking the Complaint and accompanying exhibits (Docs. 1, 2, 7, and 15) under Fed. R. Civ. P. 12(f)(1) and denying as moot Mr. Khan's Motion to Amend or Supplement Complaint in light of an order to file an amended complaint. (Doc. 31 at 3.) Specifically, Magistrate Judge Vidmar directed Mr. Khan

> to file an amended complaint setting forth a plain, simple, concise, and direct statement of his claim in compliance with Fed. R. Civ. P. 8 and D.N.M.LR-Civ. 10.4 no later than February 26, 2016.

(Doc. 31 at 3.) Magistrate Judge Vidmar further ordered that "[t]he combined length of the amended complaint and any exhibits [could] not exceed 35 pages." *Id.* At that time, Mr. Khan had also asked the Court to appoint counsel. (Doc. 9.) Although Magistrate Judge Vidmar recognized Mr. Khan's request for the appointment of counsel as "well-organized and thorough[,]" Magistrate Judge Vidmar ultimately denied Mr. Khan's Motion because the underlying claims that Mr. Khan had presented were not "sufficiently meritorious or complex to warrant requesting the voluntary assistance of counsel." (Doc. 12 at 2.)

Before Magistrate Judge Vidmar entered the order (Doc. 31) striking Mr. Khan's Complaint (Doc. 1) and accompanying exhibits (Docs. 2, 7, and 15), Mr. Khan also filed a Pro Se Motion seeking to certify his complaint as a class action (Doc. 8) and a Pro Se Motion to Direct Service on the Defendants (Doc. 14). Since then, Mr. Khan has also filed several letters and motions, including:

- a Pro Se Motion for a Preliminary Injunction and Temporary Restraining Order (Doc. 18) in which he seeks to enjoin the Doña Ana County Detention Center

3

from engaging in a "blanket" policy of strip-frisk searches of people who are transported away from the facility;

● a Pro Se Motion to Convert Docs. 1, 2, 7, and 15 to "Plaintiff's Declaration" (Doc. 44)—that is, to convert the Complaint and accompanying exhibits that Magistrate Judge Vidmar ordered stricken in Doc. 31 into a signed declaration by Mr. Khan; and

● a Pro Se Motion to Compel Issuance of Summons and Serve Complaint to this Court (Doc. 48)—seeking to serve the Complaint on all of the Defendants and issue a summons for each Defendant (Doc. 48 at 3).

The Court now denies these Motions (Docs. 8, 14, 18, 44, and 48) as moot, given the Court's present dismissal of Mr. Khan's complaint. As discussed below, the denial of the motions is without prejudice. If Mr. Khan files an Amended Complaint within forty-five (45) days that complies with this Memorandum Opinion and Order, he may re-file the motions that the Court now denies as moot. The reasons for the Court's denial of the Motions (Docs. 8, 14, 18, 44, and 48) and dismissal of Mr. Khan's Complaint are below.

## II.     Mr. Khan's Factual Allegations

When he filed his Complaint, Mr. Khan was in pretrial detention at the Doña Ana County Detention Center (DACDC). (Doc. 35 at 21.) He appears to have been detained there for an unusually long period of time. Mr. Khan alleges that he was initially detained on May 9, 2012. (Doc. 35 at ¶ 21.) According to the record in two federal criminal cases, however, Mr. Khan was arrested on May 22, 2012 and on November 13, 2012. *See* Doc. 10 in *United States v. Khan*, No. 12-1191 (D.N.M. May 31, 2012) and Doc. 9 in *United States v. Khan*, No. 12- 2901 (D.N.M. Nov. 15, 2012). He was sentenced for a federal offense on June 27, 2016—more than four years after he was first arrested. *See* Doc. 171 in *United States v. Khan*, No. 12- 2779 (D.N.M. June 27, 2016). He is now incarcerated at the Federal Correctional Institution at Fort Dix. (Doc. 66.)

In his Complaint, rather than providing the Court with a narrative of what happened to him at DACDC, Mr. Khan describes a laundry list of grievances about the conditions of confinement there.

**Mr. Khan alleges that several Defendants and the County fail to provide adequate training for the DACDC officers.** He urges that Defendants Barela, Hooser, Roach, and Porter, as well as Doña Ana County, only trained DACDC officers in "security" and failed to train officers in "prisoner rights[,]" "faith neutrality of government officials," "medical emergencies[,]" "the limits of their power," "basic law such as Constitutional [r]ights, [r]ights of [p]retrial [d]etainees, [r]ights of [c]onvicted [p]ersons, or [r]ights of the general public entering the DACDC." (Doc. 35 at ¶¶ 29–32 and 33–36.) Mr. Khan also urges that instead, officers receive training "to punish all detainees by enforcing arbitrary and purposeless policies." (*Id.* at ¶ 33.) Furthermore, he alleges that DACDC officers who complain to Defendants Barela, Hooser, Roach, Porter, and Doña Ana County about their lack of training "are always denied" training. (*Id.* at ¶ 37.)

**Mr. Khan also alleges that the DACDC grievance system is inadequate.** Mr. Khan contends that DACDC's grievance system does not result in policy changes and is only a "protest" system with no "remedies" available through the system. (*Id.* at ¶¶ 38–40.)

**Mr. Khan claims that many of the conditions of his confinement at DACDC violate the Constitution.** (Doc. 35 at ¶ 1.) He alleges: a lack of sunlight and exercise (*Id.* at ¶¶ 88–101); inadequate food (*Id.* at ¶¶ 128–135); excessively noisy conditions (*Id.* at ¶¶ 136–137); inadequate bedding (*Id.* at ¶¶ 138–142); inadequate clothing (*Id.* at ¶¶ 143–148); unsanitary barber services (*Id.* at ¶¶ 149–152); excessively bright nighttime lighting (*Id.* at ¶¶ 153–156); and a proscription on sitting on toilets or beds (*Id.* at ¶ 157). Mr. Khan also alleges disparate conditions in that at

least one other living unit has nicer confinement conditions, including sofas, chairs, board games, and music. (*Id.* at ¶¶ 165–168.)

**Mr. Khan alleges that certain practices involving religion at the DACDC are unlawful.** Mr. Khan is a Muslim and he alleges that prison officials failed to give him a daily prayer schedule and Islamic Observance Calendar when he requested them. Without the schedule and calendar, Mr. Khan argues that he was not able to follow daily prayer and "missed Ramadan at least twice." (*Id.* at ¶¶ 41–46.) He urges that Defendants Barela, Hooser, Roach, Porter, and Doña Ana County "actively prevented" Defendants Stickles and Doe (Beam) from providing the schedule and calendar. (*Id.* at ¶ 48.) Mr. Khan also alleges that there is no procedure at DACDC for night meals during Ramadan. (*Id.* at ¶ 47.)

Mr. Khan also argues that "Defendants Barela, Hooser, Roach, Porter, Stickles, and Doe (Beam) have established Christianity as the preferred religion of DACDC." (*Id.* at ¶ 49.) In support of this argument, Mr. Khan notes that "DACDC has only [one] Muslim volunteer" but has "45 Christian volunteers." Mr. Khan alleges that only the Christian volunteers have "total facility access." (*Id.* at ¶¶ 50–51.) According to Mr. Khan, "Christian volunteers give pod-wide sermons," Mr. Khan argues that he was effectively forced to listen to at least three of the Christian sermons because officials required him to remain in his pod while the sermons were being delivered, and that Defendants Stickles and Doe (Beam) introduced Mr. Khan to Christian volunteers twice. (*Id.* at ¶¶ 52–54.) Mr. Khan argues that officials required him to remain in a pod while Christian sermons were being presented. (Doc. 35 at ¶¶ 41–67.) Mr. Khan also contends that prison officials favor and promote Christian beliefs because there are more Christian volunteers at DACDC, DACDC officials introduce Christian volunteers, Christian

detainees are given feature-length movies to watch at chapel, and "only Christian inmates are permitted" to have "congregational services." (Doc. 35 at ¶¶ 50–67, 160.)

**Mr. Khan asserts several claims of constitutionally insufficient healthcare**, including that DACDC failed to provide him mental health treatment that he requested, that DACDC's electronic kiosk for medical complaints is an inadequate healthcare access system, that DACDC has an inadequate healthcare delivery system because it uses unsupervised LPNs, that DACDC provides inadequate dental healthcare because it does not permit purchase of dental floss and provides only extraction services, and that DACDC has no programs for people with alcoholism or other drug addictions. (Doc. 35, ¶¶ 102–109, 110–113, 114–123, 124–127, and 159.)

**Mr. Khan alleges that the DACDC policy of engaging in "strip-frisk" searches of people transported away from the facility is "very invasive."** (Doc. 35 at ¶ 85.)

**Mr. Khan alleges that DACDC policies and practice unlawfully interfere with and prohibit certain correspondence.** Mr. Khan asserts three claims relating to incoming correspondence, outgoing correspondence, and incoming privileged correspondence. (Doc. 35 at ¶¶ 68–82). With respect to incoming and outgoing unprivileged mail, Mr. Khan challenges prison policies that do not permit hardcover books, colored ink, pictures with buttocks nudity, or newspapers, and that do permit opening and photocopying of outgoing mail. (Doc. 35 at ¶¶ 68–78). Mr. Khan's claim relating to incoming privileged correspondence alleges that on one occasion a prison official opened mail from a governmental entity, the New Mexico Board of Nursing. Mr. Khan does not allege any improper motive in opening the mail or any resulting interference with Mr. Khan's legal rights. (Doc. 35 at ¶¶ 79–82).

## ANALYSIS

I.  **The Court denies Mr. Khan's Motion for Class Certification because Mr. Khan, acting pro se, cannot maintain claims on behalf of a class. The Court dismisses the class claims.**

Mr. Khan is proceeding pro se and *in forma pauperis.* He brings this action on his own behalf and on behalf of "All Others Similarly Situated." (Doc. 35.) Mr. Khan has also filed a Pro Se Motion to Certify Complaint as a Class Action. (Doc. 8.) The Court denies Mr. Khan's Pro Se Motion to Certify Complaint as a Class Action and will dismiss the class action claims.

A court may not certify a class unless it determines the representative party will fairly and adequately protect the interests of the class. FED. R. CIV. P. 23(a)(4). When a court reviews the adequacy of the representation under Rule 23(a)(4), it is required to consider not only the character and quality of the named representative party, but also the quality and experience of the attorneys for the class. 7A Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice and Procedure: Civil § 1769.1 (3d ed. 2005). In *Fymbo v. State Farm Fire and Casualty Co.,* 213 F.3d 1320 (10th Cir. 2000), the Tenth Circuit concluded that a litigant may bring his or her own claims to federal court without counsel, but not the claims of others because "the competence of a layman is 'clearly too limited to allow him to risk the rights of others.'" *Id.* at 1321 (quoting *Oxendine v. Williams,* 509 F.2d 1405, 1407 (4th Cir. 1975)); *see also* 7A Wright & Miller, *Federal Practice and Procedure: Civil* § 1769.1 (citing cases for the rule that class representatives cannot appear pro se).

The rule against pro se representation of a putative class is important because class litigation must comply with the complex requirements of Rule 23 of the Federal Rules of Civil Procedure. Rule 23(g) mandates appointment of class counsel, unless otherwise provided by statute. *See also* FED. R. CIV. P. 23(c)(1)(B) (requiring appointment of class counsel when district

8

court certifies class). Importantly, a judgment in a class action may foreclose other class members from later bringing the same claims. *See* FED. R. CIV. P. 23(c)(3). For this reason, the Tenth Circuit has stated that this Court may not entrust the claims of other class members to a non-lawyer. *Ransom v. U.S. Postal Serv.*, 170 F. App'x 525, 528–30 (10th Cir. 2006); *Beierle v. Colorado Dep't of Corr.*, 79 F. App'x 373, 375 (10th Cir. 2003).

Mr. Khan may not, acting pro se, maintain claims on behalf of a class. The Court DENIES his Motion to Certify the Complaint as a Class Action and DISMISSES the class action claims. (Doc. 8.)

## II.     The Court denies Mr. Khan's Motion for a Preliminary Injunction and Temporary Restraining Order as Moot.

In his Pro Se Motion for a Preliminary Injunction and Temporary Restraining Order, Mr. Khan asks the Court to issue a temporary restraining order ("TRO") pending a hearing on the preliminary injunction and then a hearing on an Order to Show Cause as to why a preliminary injunction should not issue. (Doc. 18 at 7.) Specifically, Mr. Khan asks the Court to enjoin the DACDC from enforcing its policy of conducting strip-frisk searches of people before they are transported away from the detention center. (Doc. 18 at 2.)

Before reaching the merits of Mr. Khan's Motion, the Court must first address its mootness. Under Article III of the United States Constitution, federal courts may only adjudicate "cases or controversies." As a result, the Court must "decline to exercise jurisdiction where the award of any requested relief would be moot—i.e. where the controversy is no longer live and ongoing." *Cox v. Phelps Dodge Corp.*, 43 F.3d 1345, 1348 (10th Cir.1994) (superseded by statute on other grounds as recognized in *Walker v. United Parcel Serv., Inc.*, 240 F.3d 1268, 1278 (10th Cir.2001))."The touchstone of the mootness inquiry is whether the controversy continues to 'touch the legal relations of parties having adverse legal interests' in the outcome of

the case." *Cox*, 43 F.3d at 1348 (quoting *DeFunis v. Odegaard*, 416 U.S. 312, 317 (1974) (per curiam)). The legal interest must be "more than simply the satisfaction of a declaration that a person was wronged." *Id*. Generally, it is "the settling of some dispute which affects the behavior of the defendant toward the plaintiff" that distinguishes a case or controversy from an advisory opinion. *Id.* at 1348 (quoting *Hewitt v. Helms*, 482 U.S. 755, 761 (1987)).

Here, in August 2016, Mr. Khan was transferred from DACDC to the Federal Correctional Institution at Fort Dix. (Doc. 66.) Following Mr. Khan's transfer from the detention center, "the entry of a declaratory judgment [and injunctive relief] in [Mr. Khan's] favor would amount to nothing more than a declaration that he was wronged." *Green v. Branson*, 108 F.3d 1296, 1299 (10th Cir.1997). Accordingly, the Court concludes that Mr. Khan's claims for declaratory and injunctive relief are now moot. *See id.* (finding prisoner's claims for declaratory and injunctive relief moot, in light of his release from incarceration, and collecting cases).

Mr. Khan's damages claims, however, are not moot. Despite Mr. Khan's transfer from the detention center, those claims "remain viable because a judgment for damages in his favor would alter the defendants' behavior by forcing them to pay an amount of money they otherwise would not have paid." *Id.* Because the Court reads Mr. Khan's complaint as seeking damages for all of the constitutional violations he has alleged, there is a case or controversy about all of those alleged violations, including his allegations about the strip-frisk search.

Because the Court dismisses Mr. Khan's Pro Se Complaint below, the Court also DENIES Mr. Khan's Motion for a Preliminary Injunction and Temporary Restraining Order as Moot.

### III. The Court dismisses Mr. Khan's Pro Se Motion to Direct Service, Motion for Order to Convert Documents, and Motion to Compel Issuance of Summons in light of the Court's dismissal of Mr. Khan's Complaint.

Mr. Khan also filed a Pro Se Motion to Direct Service (Doc. 14), Motion for Order to Convert Documents (Doc. 44), and Motion to Compel Issuance of Summons (Doc. 48). The Court denies Mr. Khan's motions as moot in light of the Court's dismissal of Mr. Khan's Complaint. The Court's denial is without prejudice as to his right to re-file the procedural motions in the event that Mr. Khan files an amended complaint consistent with this Memorandum Opinion and Order.

### IV. Under 28 U.S.C. § 1915(e)(2)(B) and FED. R. CIV. P. 12(B)(6), the Court dismisses Mr. Khan's Complaint *sua sponte*

Mr. Khan is proceeding pro se and *in forma pauperis*. The Court has the discretion to dismiss an *in forma pauperis* complaint *sua sponte* for failure to state a claim upon which relief may be granted under either FED. R. CIV. P. 12(b)(6) or 28 U.S.C. § 1915(e)(2)(B). Under FED. R. CIV. P. 12(b)(6) the Court must accept all well-pleaded factual allegations, but not conclusory, unsupported allegations, and may not consider matters outside the pleading. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555–57 (2007); *Dunn v. White,* 880 F.2d 1188, 1190 (10th Cir. 1989) ("[a]ll well-pleaded facts, as distinguished from conclusory allegations, must be taken as true.") (quoting *Swanson v. Bixler*, 750 F.2d 810, 813 (10th Cir.1984)). The Court may dismiss a complaint under Rule 12(b)(6) for failure to state a claim if "it is 'patently obvious' that the plaintiff could not prevail on the facts alleged." *Hall v. Bellmon,* 935 F.2d 1106, 1109 (10th Cir. 1991) (quoting *McKinney v. Oklahoma Dep't of Human Services,* 925 F.2d 363, 365 (10th Cir. 1991)). A plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." *Twombly,* 550 U.S. at 570. A claim should be dismissed where it is legally or factually insufficient to state a plausible claim for relief.  *Id.*

11

Under Section 1915(e)(2)(B)(ii) the court may dismiss the complaint at any time if the court determines the action fails to state a claim for relief or is frivolous or malicious. The authority granted by Section 1915 permits the court the unusual power to pierce the veil of the complaint's factual allegations and dismiss those claims whose factual contentions are clearly baseless. *Neitzke v. Williams,* 490 U.S. 319, 327 (1989); *see also Hall,* 935 F.2d at 1108–09. The authority to "pierce the veil of the complaint's factual allegations" means that a court is not bound, as it usually is when making a determination based solely on the pleadings, to accept without question the truth of the plaintiff's allegations. *Neitzke,* 490 U.S. at 327; *see also Denton v. Hernandez,* 504 U.S. 25, 32–33 (1992). The court is not required to accept the truth of the plaintiff's allegations but, instead, may go beyond the pleadings and consider any other materials filed by the parties, as well as court proceedings subject to judicial notice. *Denton,* 504 U.S. at 32–33.

In reviewing a pro se complaint, the Court liberally construes the factual allegations. *See Northington v. Jackson*, 973 F.2d at1520–21 (citing *Haines v. Kerner,* 404 U.S. 519, 520–21 (1972)). However, a pro se plaintiff's pleadings are judged by the same legal standards that apply to all litigants and a pro se plaintiff must abide by the applicable rules of court. *Ogden v. San Juan County,* 32 F.3d 452, 455 (10th Cir. 1994) (a plaintiff's "pro se status does not excuse the obligation of any litigant to comply with the fundamental requirements of the Federal Rules of Civil . . . Procedure."). The Court is not obligated to craft legal theories for the plaintiff or to supply factual allegations to support the plaintiff's claims. Nor may the Court "assume the role of advocate for the pro se litigant." *Hall v. Bellmon,* 935 F.2d at 1110.

In deciding whether to dismiss the Complaint, in whole or in part, the Court must consider whether to allow Mr. Khan an opportunity to amend his Complaint. Pro se plaintiffs

should be given a reasonable opportunity to remedy defects in their pleadings. *Reynoldson v. Shillinger,* 907 F.2d 124, 126 (10th Cir. 1990). The opportunity to amend should be granted unless amendment would be futile. *Hall,* 935 F.2d at 1109. An amendment is futile if the amended claims would also be subject to dismissal under Rule 12(b)(6) or under Section 1915(e)(2)(B) standards. *Bradley v. Val-Mejias,* 379 F.3d 892, 901 (10th Cir. 2004).

For the specific reasons stated in the subsections below, the Court dismisses Mr. Khan's Complaint, but grants Mr. Khan forty-five (45) days from the date of this Order in which to file an amended Complaint that complies with this Memorandum Opinion and Order

### A. Mr. Khan's Complaint fails to state a plausible Section 1983 claim for relief against Doña Ana County or Defendants Barela, Hooser, Roach, or Porter.

Mr. Khan names Doña Ana County as a defendant and asserts claims against Defendants Barela, Hooser, Roach, and Porter as employees of Doña Ana County. Mr. Khan alleges that the County, through Defendants Barela, Hooser, Roach, and Porter, filed to train officers in prisoner rights, religious neutrality, medical emergencies, the limits of their power, and basic law. (Doc. 35 at ¶¶ 29–37). Mr. Khan also contends that DACDC's grievance system is only a "protest" system and there are no "remedies" available through the system. (Doc. 35 at ¶¶ 38–40). Mr. Khan's claims against Doña Ana County and its employees fail to state a claim for several reasons.

First, Mr. Khan improperly identifies "Doña Ana County" as a Defendant. (Doc. 35 at 1, 3). Suit may not be brought naming "Doña Ana County" but, instead must be brought against the Board of County Commissioners of Doña Ana County. *See* N.M. Stat. Ann. § 4–46–1 (1978). The Complaint fails to state a claim for relief because "Doña Ana County" is not properly named as a defendant.

Second, "[t]o state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins*, 487 U.S. 42, 48 (1988) (citing *Parratt v. Taylor*, 451 U.S. 527, 535 (1981) (overruled in part on other grounds, *Daniels v. Williams*, 474 U.S. 327, 330–331 (1986)); *Flagg Bros., Inc. v. Brooks*, 436 U.S. 149, 155 (1978)). There must be a connection between official conduct and violation of a constitutional right. Conduct that is not connected to a constitutional violation is not actionable under Section 1983. *See Trask v. Franco*, 446 F.3d 1036, 1046 (10th Cir. 1998).

Further, a civil rights action against a public official or entity may not be based solely on a theory of respondeat superior or vicarious liability. A plaintiff must plead that each government official, through the official's own individual actions, has violated the Constitution. *Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009). A plaintiff must allege some "personal involvement" by an identified official in the alleged constitutional violation to succeed under Section 1983. *Fogarty v. Gallegos*, 523 F.3d 1147, 1162 (10th Cir. 2008) (quoting *Foote v. Spiegel*, 118 F.3d 1416, 1423 (10th Cir. 1997)). In a Section 1983 action, a plaintiff's complaint must "make clear exactly *who* is alleged to have done *what to whom*, to provide each individual with fair notice as to the basis of the claim against him or her." *Robbins v. Oklahoma*, 519 F.3d 1242, 1249–50 (10th Cir. 2008) (emphasis in the original).

Mr. Khan's claims about the lack of officer training and the inadequacy of DACDC's grievance policy contain broad allegations, but do not identify any actual individual conduct on the part of any Defendant. Nor does Mr. Khan allege any connection between the either the training or the grievance policies and a violation of Mr. Khan's individual constitutional rights. (Doc. 35 at ¶¶ 29–40). Mr. Khan's Complaint fails to state a plausible Section 1983 claim for

14

relief against Doña Ana County or Defendants Barela, Hooser, Roach, or Porter. *See Twombly*, 550 U.S. at 570.

**B.  Mr. Khan's Complaint fails to allege facts about his conditions of confinement that show a deprivation of a constitutional right under the Eighth Amendment.**

Mr. Khan filed this Section 1983 proceeding in December 2015 while he was pretrial detainee at DACDC. Mr. Khan claims that many of the conditions of his confinement at DACDC violate the Constitution (Doc. 35 at ¶ 1): lack of sunlight and exercise (*Id.* at ¶¶88–101); inadequate food (*Id.* at ¶¶ 128–135); excessively noisy conditions (*Id.* at ¶¶ 136–137); inadequate bedding (*Id.* at ¶¶ 138–142); inadequate clothing (*Id.* at ¶¶ 143–148); unsanitary barber services (*Id.* at ¶¶ 149–152); excessively bright nighttime lighting (*Id.* at ¶¶ 153–156); and a proscription on sitting on toilets or beds (*Id.* at ¶ 157). Mr. Khan also alleges disparate conditions in that at least one other living unit has nicer confinement conditions, including sofas, chairs, board games, and music. (*Id.* at ¶¶ 165–168.)

Under the Due Process Clauses of the Fifth and Fourteenth Amendments, people in pretrial detention—those, like Mr. Khan at the time he filed his Complaint, who have been charged with a crime, but who have not yet been proven guilty—may not be punished. *Bell v. Wolfish*, 441 U.S. 520, 535 (1979). The Circuits, however, are divided on which constitutional standard should apply in evaluating pretrial detainees' conditions of confinement and whether the standard that applies to pretrial detainees should be more protective than that which applies to people who are incarcerated after a conviction. Most circuits, including the Tenth Circuit, apply the Eighth Amendment "subjective deliberate indifference" standard to evaluate the constitutionality of most conditions-of-confinement claims brought by pretrial detainees—this, despite the central constitutional principle that people cannot be punished until they are proven guilty. *Lopez v. LeMaster*, 172 F.3d 756, 759 n. 2, 759–61 (10th Cir. 1999); *Craig v. Eberly*, 164

F.3d 490, 495 (10th Cir. 1998); *see also McClendon v. City of Albuquerque*, 79 F.3d 1014, 1022 (10th Cir. 1996) ("Although pretrial detainees are protected under the Due Process Clause of the Fourteenth Amendment, the Eighth Amendment standards applicable to convicted persons provide the benchmark."). "But at least so far the Court has done comparatively little to clarify the standards of care due to those who find themselves between these stools—held by the government after arrest but before conviction at trial." *Blackmon v. Sutton*, 734 F.3d 1237, 1240 (10th Cir. 2013) (citing Catherine T. Struve, *The Conditions of Pretrial Detention*, 161 U. Pa. L. Rev. 1009 (2013)).

In the Tenth Circuit, then, "[a]lthough the Due Process Clause governs a pretrial detainee's claim of unconstitutional conditions of confinement, the Eighth Amendment standard provides the benchmark for such claims." *Craig v. Eberly*, 164 F.3d 490, 495 (10th Cir. 1998) (internal citation omitted) (citing *McClendon v. City of Albuquerque*, 79 F.3d 1014, 1022 (10th Cir. 1996)). The Eighth Amendment requires that jail officials "provide humane conditions of confinement by ensuring inmates receive the basic necessities of adequate food, clothing, shelter, and medical care, and by taking reasonable measures to guarantee the inmates' safety." *Craig*, 164 F.3d at 495 (quoting *Barney v. Pulsipher,* 143 F.3d 1299, 1310 (10th Cir. 1998)); *Farmer*, 511 U.S. at 832–33 (1994). To hold a prison official "personally liable for violating an inmate's right to humane conditions of confinement, a plaintiff must satisfy two requirements, consisting of an objective and subjective component." *Craig*, 164 F.3d at 495 (citing *Barney*, 143 F.3d at 1310).

"The objective component requires that the alleged deprivation be 'sufficiently serious.'" *Craig*, 164 F.3d at 495 (quoting *Wilson v. Seiter,* 501 U.S. 294, 298 (1991)). "Although what constitutes cruel and unusual punishment under the Eighth Amendment 'must draw its meaning

from the evolving standards of decency that mark the progress of a maturing society,' 'the Constitution does not mandate comfortable prisons.'" *Craig*, 164 F.3d at 495 (internal citations omitted) (citing to *Rhodes v. Chapman*, 452 U.S. 337, 346, 349 (1981) (quoting *Trop v. Dulles*, 356 U.S. 86, 101 (1958) (plurality opinion)). "To the contrary, jail conditions may be 'restrictive and even harsh' without violating constitutional rights. *Barney*, 143 F.3d at 1311 (quoting *Rhodes*, 452 U.S. at 347 [])." *Craig*, 164 F.3d at 495. Only "deprivations denying the minimal civilized measure of life's necessities . . . are sufficiently grave to form the basis of an Eighth Amendment violation." *Wilson*, 501 U.S. at 298; *accord Farmer v. Brennan*, 511 U.S. 825, 834 (1994). "This inquiry turns not only on the severity of the alleged deprivations, but also on their duration." *Craig*, 164 F.3d at 495 (citing *Barney*, 143 F.3d at 1311).

"Additionally, when, as in this case, a claim involves numerous alleged inhumane conditions, we must bear in mind that '[s]ome conditions of confinement may establish an Eighth Amendment violation "in combination" when each would not do so alone, but only when they have a mutually enforcing effect that produces the deprivation of a single, identifiable human need such as food, warmth, or exercise.'" *Craig*, 164 F.3d at 495 (quoting *Wilson*, 501 U.S. at 304). "However, '[n]othing so amorphous as 'overall conditions' can rise to the level of cruel and unusual punishment when no specific deprivation of a single human need exists.'" *Craig*, 164 F.3d at 495 (quoting *Wilson* 501 U.S. at 305).

"The subjective component requires the prison official to have a 'sufficiently culpable state of mind.'" *Craig*, 164 F.3d at 495 (quoting *Wilson*, 501 U.S. at 297). "In the context of prison-conditions claims, the required state of mind is one of 'deliberate indifference' to inmate health and safety." *Craig*, 164 F.3d at 495 (citing *Farmer*, 511 U.S. at 834 (quoting *Wilson*, 501 U.S. at 302–03)). An official is "liable only if he or she 'knows of and disregards an excessive

17

risk to inmate health and safety[.]'" *Craig*, 164 F.3d at 495 (quoting *Farmer*, 511 U.S. at 837). "[T]he official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he [or she] must also draw the inference." *Craig*, 165 F.3d at 495 (quoting *Farmer*, 511 U.S. at 837). "It is not sufficient to simply establish that the official should have known of the risk of harm." *Craig*, 165 F.3d at 495–96 (quoting *Barney,* 143 F.3d 1310).

In this case, Mr. Khan does not allege that he is actually being deprived of any basic human need. Instead, he is dissatisfied that he is allowed only limited access to the recreation yard, access is at the wrong time of day, there is no room for jogging or running in the yard, and the yard only has one pull-up station. (Doc. 35 at ¶¶ 88–101.) With respect to inadequate food, he contends that the facility serves a disproportionate amount of carbohydrates and does not serve enough vegetables, but he does not allege he has actually been deprived of food. (*Id.* at ¶¶ 128–135.) Mr. Khan also claims that DACDC does not use any sound dampening products, only exchanges uniforms twice a week, does not clean hair clippers between haircuts, and uses 24-hour lighting that no one is permitted to block out. (*Id.* at ¶¶ 136, 138, 144, 149, 153, 156.)

Mr. Khan's allegations do not rise to the level of sufficiently serious to state a claim for deprivation of a constitutional right under the Eighth Amendment. Nor do his allegations establish that prison officials were aware of but deliberately chose to disregard an excessive risk to his health or safety. Neither the objective nor the subjective component of an Eighth Amendment claim for unconstitutional prison conditions are met in this case. *Wilson v. Seiter,* 501 U.S. at 298; *Barney v. Pulsipher,* 143 F.3d 1310.

**C. Mr. Khan's Complaint fails to allege facts that show that the Defendants imposed a substantial burden on his religious exercise.**

Mr. Khan asserts claims under the Religious Land Use of Institutionalized Persons Act, 42 U.S.C. §§ 2000cc, et seq. (RLUIPA) and the First Amendment. His religious freedom and establishment claims allege that Mr. Khan is a Muslim, that prison officials failed to give him a daily prayer schedule and Islamic Observance Calendar when he requested them, and that the officials required him to remain in a pod while Christian sermons were being presented. (Doc. 35 at ¶¶ 41–67.) Mr. Khan also contends that prison officials favor and promote Christian beliefs because there are more Christian volunteers at DACDC, DACDC officials introduce Christian volunteers, and Christian detainees are given feature-length movies to watch at chapel. (Doc. 35 at ¶¶ 50–67, 160).

Prisoners and detainees do not forfeit all constitutional protections by reason of their confinement. *See generally Bell,* 441 U.S. at 545; *Turner v. Safley,* 482 U.S. 78, 84 (1987) ("Prison walls do not form a barrier separating prison inmates from the protections of the Constitution"). And people confined in pretrial detention—as Mr. Khan was at the time he filed his Complaint—"who have not been convicted of any crimes, retain at least those constitutional rights that we have held are enjoyed by convicted prisoners." *Bell*, 441 U.S. at 545.

Inmates clearly retain protections afforded by the First Amendment, including its directive that no law shall prohibit the free exercise of religion or establish a religion. *See Pell v. Procunier,* 417 U.S. 817, 822 (1974) ("a prison inmate retains those First Amendment rights that are not inconsistent with his status as a prisoner or with the legitimate penological objectives of the corrections system"); *see also Cruz v. Beto,* 405 U.S. 319 (1972) (*per curiam* ).

As a threshold matter, when faced with either a First Amendment claim or a RLUIPA claim, a court must inquire as to whether the plaintiff has fulfilled his or her burden of alleging

sufficient facts to show that "the government has imposed a substantial burden" on the plaintiff's "sincerely motivated 'religious exercise[.]'" *Yellowbear*, 741 F.3d at 55. This inquiry must focus on the coercive impacts of the government's actions on the individual claimant's ability to engage in a religious exercise. The Tenth Circuit has found a burden to be substantial where:

> a government (1) requires participation in an activity prohibited by a sincerely held religious belief, or (2) prevents participation in conduct motivated by a sincerely held religious belief, or (3) places substantial pressure on an adherent either not to engage in conduct motivated by a sincerely held religious belief or to engage in conduct contrary to a sincerely held religious belief, such as where the government presents the plaintiff with a Hobson's choice—an illusory choice where the only realistically possible course of action trenches on an adherent's sincerely held religious belief.

*Abdulhaseeb v. Calbone*, 600 F.3d 1301, 1314–15 (10th Cir.2010) (citing, in support of the third part, *Thomas v. Review Bd. of Ind. Employ't Sec. Div.*, 450 U.S. 707 (1981) and *Sherbert v. Verner*, 374 U.S. 398 (1963)); *see also Yellowbear v. Lampert,* 741 F.3d 48, 54–55 (10th Cir. 2014). If the plaintiff does not allege facts to show that the government placed a substantial burden on his or her sincerely motivated religious exercise, a court need not examine the claim further because the plaintiff cannot prevail without a showing of a "substantial burden." *See* 42 U.S.C.A. § 2000cc–1(a); *see also Yellowbear,* 741 F.3d at 55 ("separate and apart from showing a sincerely motivated 'religious exercise,' a RLUIPA plaintiff must also demonstrate the government has imposed a 'substantial burden' on that exercise").

The allegations of Mr. Khan's Complaint do not show any substantial burden. Mr. Khan does not allege that any Defendant required him to participate in an activity prohibited by a sincerely held religious belief, prevented him from participating in an activity motivated by a sincerely held religious belief, or placed considerable pressure on him to violate a sincerely held religious belief. *Yellowbear,* 741 F.3d at 54–55. Mr. Khan does allege that he was handcuffed on one occasion when meeting with a Muslim volunteer, but does not identify any involvement by

any Defendant in the alleged handcuffing or how the handcuffing violated a constitutional right. (Doc. 35 at ¶¶ 63-64).

Mr. Khan's allegations fail to state a First Amendment or RLUIPA claim. *Abdulhaseeb v. Calbone,* 600 F.3d at 1316.

### D.  Mr. Khan's Complaint fails to allege facts that show constitutionally insufficient healthcare.

Mr. Khan asserts several claims of constitutionally insufficient healthcare, including that DACDC failed to provide him mental health treatment that he requested, that DACDC's electronic kiosk for medical complaints is an inadequate healthcare access system, that DACDC has an inadequate healthcare delivery system because it uses unsupervised LPNs, that DACDC provides inadequate dental healthcare because it does not permit purchase of dental floss and provides only extraction services, and that DACDC has no programs for people with alcoholism or other drug addictions. (Doc. 35, ¶¶ 102–109, 110–113, 114–123, 124–127, and 159.)

Principles of dignity, civility, humanity, and decency establish the government's obligation to provide medical care to those who are incarcerated. *Estelle v. Gamble.* 429 U.S. 97,103 (1976). "Although '[p]retrial detainees are protected under the Due Process Clause rather than the Eighth Amendment, . . . this Court applies an analysis identical to that applied in Eighth Amendment cases brought pursuant to § 1983.' *Lopez v. LeMaster*, 172 F.3d 756, 759 n. 2 (10th Cir.1999)." *Olsen v. Layton Hills Mall*, 312 F.3d 1304, 1315 (10th Cir. 2002). An Eighth Amendment claim for deliberate indifference to serious medical needs involves a two-pronged inquiry, comprised of an objective component and a subjective component. *Sealock v. Colo.*, 218 F.3d 1205, 1209 (10th Cir.2000).With respect to the objective component, "a medical need is sufficiently serious 'if it is one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's

attention.'" *Hunt v. Uphoff*, 199 F.3d 1220, 1224 (10th Cir.1999) (quoting *Ramos v. Lamm*, 639 F.2d 559, 575 (10th Cir.1980) (further quotation omitted)). The question is not limited to whether the inmate's symptoms render a medical need sufficiently serious, but also extends to whether the potential risk of substantial harm to the inmate is sufficiently serious. *Mata v. Saiz*, 427 F.3d 745, 752 (10th Cir. 2005).

Under the subjective component, the defendant must have a sufficiently culpable state of mind. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994); *see also Self v. Crum*, 439 F.3d 1227, 1231 (10th Cir. 2006). In other words, a plaintiff must establish that the defendant "knew [the plaintiff] faced a substantial risk of harm and disregarded that risk, 'by failing to take reasonable measures to abate it.'" *Hunt v. Uphoff*, 199 F.3d 1220, 1224 (10th Cir.1999) (quoting *Farmer*, 511 U.S. at 847). Unlike the objective component, the symptoms displayed by the prisoner are relevant to the subjective component of deliberate indifference. *Mata*, 427 F.3d at 753.

With regard to the subjective component, the question for consideration by the Court is: "were the symptoms such that a prison employee knew the risk to the prisoner and chose (recklessly) to disregard it?" *Martinez v. Beggs*, 563 F.3d 1082, 1089 (10th Cir.2009) (quoting *Mata*, 427 F.3d at 753). Prison officials who "actually knew of a substantial risk to inmate health or safety may be found free from liability if they responded reasonably to the risk, even if the harm ultimately was not averted." *Howard v. Waide*, 534 F.3d 1227, 1239 (10th Cir. 2008) (quoting *Farmer*, 511 U.S. at 844–45). "An official responds to a known risk in an objectively unreasonable manner if [the official] knew of ways to reduce the harm but knowingly [or] recklessly declined to act." *Howard*, 534 F.3d at 1239–40 (quoting *Rodriguez v. Sec'y for Dep't of Corr.*, 508 F.3d 611, 620 (11th Cir. 2007) (quotation omitted).

Consequently, accidental or inadvertent failure to provide adequate medical care, or

negligent diagnosis or treatment of a medical condition, does not constitute a medical wrong under the Eighth Amendment. *See Estelle*, 429 U.S. at 105–06. Moreover, a difference of opinion between the prison's medical staff and a plaintiff as to the diagnosis or treatment which the plaintiff receives does not alone give rise to a cause of action. *See, e. g., Smart v. Villar*, 547 F.2d 112, 114 (10th Cir. 1976); *Self*, 439 F.3d at 1231; *Thompson v. Gibson,* 289 F.3d 1218, 1222 (10th Cir.2002).

The allegations of Mr. Khan's Complaint do not show that a physician has diagnosed him with a serious medical condition mandating treatment or a condition that even a layperson would recognize as requiring a physician's attention. *Ramos,* 639 F.2d at 575. Further, even if he has been diagnosed with a serious medical condition, there are no allegations showing that any of the Defendants acted with a subjectively culpable state of mind that rises to the level of deliberate indifference to Mr. Khan's medical needs. *Farmer*, 511 U.S. at 834; *Self*, 439 F.3d at 1230–31. The allegations of the Complaint do not state a factually plausible claim for deliberate indifference to serious medical needs in violation of the Eighth Amendment. Nor do Mr. Khan's allegations state a claim for medical malpractice or violation of the New Mexico Tort Claims Act under New Mexico state law. *See Blauwkamp v. Univ. of New Mexico Hosp*., 1992-NMCA-048, 114 N.M. 228, 233, 836 P.2d 1249, 1254 (medical malpractice/Tort Claims Act requires evidence that a health care provider did not possess or apply the skill and care used by reasonably well-qualified health care providers practicing under similar circumstances).

Mr. Khan's inadequate medical care allegations fail to state a claim on which relief can be granted.

**E.  Mr. Khan's Complaint does not state a plausible claim for relief based on the facts alleged about the strip-frisk search.**

Mr. Khan asserts a claim that an alleged strip-frisk policy is "very invasive." (Doc. 35 at ¶ 85). Mr. Khan's claim appears to raise a right of privacy violation, but does not specify the constitutional basis for his claim. The Constitution does not explicitly mention any right of privacy. In a line of decisions, however, the Court has recognized that a right of personal privacy, or a guarantee of certain areas or zones of privacy, does exist under the Constitution. The Court or individual Justices have identified the foundation of that right in the First Amendment, *Stanley v. Georgia,* 394 U.S. 557, 564 (1969), in the Fourth and Fifth Amendments, *Terry v. Ohio,* 392 U.S. 1, 8–9 (1968), *Katz v. United States,* 389 U.S. 347, 350 (1967), in the penumbras of the Bill of Rights, *Griswold v. Connecticut,* 381 U.S. 479, 484–85 (1965), in the Ninth Amendment, *id.,* at 486 (Goldberg, J., concurring), or in the concept of liberty guaranteed by the Fourteenth Amendment, *see Meyer v. Nebraska,* 262 U.S. 390, 399 (1923).

Although Mr. Khan claims that DACDC officials implemented a strip-frisk policy in January 2016, Mr. Khan does not allege that he has ever been subjected to such a strip-frisk search. Nor does he allege that any such search by any Defendant has ever resulted in a violation of his individual constitutional right to privacy. (See Doc. 35 at ¶¶ 83–87).

The Complaint is legally and factually insufficient to state a plausible claim for relief on Mr. Khan's strip-frisk search theory. *Ashcroft,* 556 U.S. at 676; *Bell Atlantic Corp.*, 550 U.S. at 570.

**F.  Mr. Khan's Complaint does not allege facts about correspondence that give rise to a plausible claim for relief.**

Mr. Khan asserts three claims relating to incoming correspondence, outgoing correspondence, and incoming privileged correspondence. (Doc. 35 at ¶¶ 68–82). With respect to

incoming and outgoing unprivileged mail, Mr. Khan challenges prison policies that do not permit hardcover books, colored ink, pictures with buttocks nudity, or newspapers, and that do permit opening and photocopying of outgoing mail. (Doc. 35 at ¶¶ 68–78). In the case of unprivileged incoming and outgoing prison mail, regulation by prison officials is essentially an administrative matter in which the courts will not intervene. *United States. v. Gordon,* 168 F.3d 1222, 1228 (10th Cir.1999) (quoting *Wilkerson v. Warden of U.S. Reformatory, El Reno,* 465 F.2d 956, 957 (10th Cir.1972)).

Mr. Khan's claim relating to incoming privileged correspondence alleges that on one occasion a prison official opened mail from a governmental entity, the New Mexico Board of Nursing. Mr. Khan does not allege any improper motive in opening the mail or any resulting interference with Mr. Khan's legal rights. (Doc. 35 at ¶¶ 79–82). It is not clear that a communication from the Board of Nursing would be privileged legal mail. However, even assuming that it was privileged, an isolated incident, without any evidence of improper motive or resulting interference with Mr. Khan's legal right to counsel or to access to the courts is insufficient to state a claim for relief. *Smith v. Maschner,* 899 F.2d 940, 944 (10th Cir.1990); *Brown v. Williams*, 36 F. App'x 361, 363 (10th Cir. 2002).

Mr. Khan also alleges a claim that he does not have access to law materials to assist him in writing meaningful legal papers and that stiff pens are not allowed in DACDC. (Doc. 35 at 161–164, 158).

The Court reads Mr. Khan's Complaint as attempting to assert unconstitutional deprivation of access to the courts due to lack of legal resources at DACDC. Prejudice is required to state a claim based on deprivation of access to the courts. *See Lewis v. Casey,* 518 U.S. 343, 351 (1996) (requiring that a prisoner demonstrate that alleged shortcomings in the

library actually hindered his or her efforts to pursue a legal claim). Although Mr. Khan claims his ability to challenge prison conditions was impaired by the lack of legal materials, he does not identify any specific legal proceeding he was unable to pursue due to lack of legal resources and, therefore, does not demonstrate prejudice. *Lewis v. Clark*, 577 F. App'x 786, 789–90 (10th Cir. 2014).

Therefore Mr. Khan's allegations about correspondence do not state a plausible claim on which relief may be granted.

## V.    The Court grants Mr. Khan an opportunity to amend his Complaint within forty-five (45) days.

In deciding whether to dismiss the complaint, in whole or in part, the Court must consider whether to allow Mr. Khan an opportunity to amend the Complaint. Pro se plaintiffs should be given a meaningful opportunity to remedy defects in their pleadings. *Reynoldson v. Shillinger,* 907 F.2d 124, 126 (10th Cir. 1990). The opportunity to amend should be granted unless amendment would be futile. *McKinney*, 925 F.2d at 365. An amendment is futile if the amended claims would also be subject to immediate dismissal under the rule 12(b)(6) or § 1915(e)(2)(B) standards. *See generally Bradley v. Val-Mejias,* 379 F.3d at 901.

Although the Court dismisses all of Mr. Khan's claims in this case for failure to state a claim upon which relief can be granted, the Court will grant Mr. Khan an opportunity to remedy the defects in his pleading. The Court will grant Mr. Khan forty-five (45) days to file an amended complaint. Any amended complaint must be consistent with this Memorandum Opinion and Order and must comply with all of the requirements of the Federal Rules of Civil Procedure, particularly the requirements of Rule 8(a) and Rule 11(b). If an amended complaint is not filed within forty-five (45) days, the Court will enter final judgment.

In the event that Mr. Khan files an amended complaint within forty-five (45) days that remedies the defects in his pleading and complies with all of the requirements of the Federal Rules of Civil Procedure, Mr. Khan must revive all of the motions which the Court now denies as moot in light of the Court's dismissal of Mr. Khan's Complaint.

## CONCLUSION

In his Complaint, Mr. Khan describes a long list of serious criticisms about conditions at the Doña Ana County Detention Center—allegations that concern this Court. However, under both the Rule 12(b)(6) standard and 28 U.S.C. § 1915(e)(2)(B), none of his allegations is legally or factually sufficient to state a plausible Section 1983 claim for a deprivation of Mr. Khan's constitutional rights and the Court will dismiss the Complaint. The Court will grant Khan forty-five (45) days to file an amended complaint. If no amended complaint is filed within that time, the Court will enter final judgment.

**IT IS ORDERED**: (1) Mr. Khan's Pro Se Motion to Certify Complaint as a Class Action (Doc. 8), Pro Se Motion to Direct Service (Doc. 14), Motion for Preliminary Injunction and Temporary Restraining Order (Doc. 18), Motion for Order to Convert Documents (Doc. 44), and Motion to Compel Issuance of Summons (Doc. 48) are **DENIED**;

(2)  Mr. Khan's Verified Prisoner's Civil Rights Complaint (Amended) filed on February 5, 2016 (Doc. 35), and all claims and causes of action in that Complaint, are **DISMISSED**;

(3)  Mr. Khan is granted leave to file an amended complaint that states a claim for relief consistent with this Memorandum Opinion and Order within forty-five (45) days of entry of the Memorandum Opinion and Order; and

(4)  In the event that Mr. Khan files an amended complaint within forty-five (45) days that remedies the defects in his pleading and complies with all of the requirements of the Federal

Rules of Civil Procedure, Mr. Khan must revive all of the motions which the Court now denies

as moot in light of the Court's dismissal of Mr. Khan's Complaint.

DATED this 30th day of September, 2016.

_____

**MARTHA VÁZQUEZ**
**UNITED STATES DISTRICT JUDGE**

ERIK KHAN                                    *Defendants not served*
*Pro Se*