IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

ERIK KHAN,

    Plaintiff,

vs.                                                                                     No. CV 15-01151 MV/SMV

CHRIS BARELA, BOARD OF COUNTY COMMISSIONERS
OF DONA ANA COUNTY, ARAMARK CORPORATION,
CORIZON MEDICAL SERVICES, ELVA BRIGHT,
BILL STICKLES, JOHN DOE (BEAM),
JASON DURAN, and TAMMY RUSH,

    Defendants.

## MEMORANDUM OPINION AND ORDER

THIS MATTER is before the Court on 28 U.S.C. Section 1915A, 28 U.S.C. Section 1915(e)(2)(B), and Rule 12(b)(6) of the Federal Rules of Civil Procedure, the Prisoner's Second Amended and Verified Civil Rights Complaint filed by Plaintiff Erik Khan (Doc. 70). The Court concludes that Plaintiff Khan's Second Amended Complaint fails to state a claim for relief and dismisses the case with prejudice.

Mr. Khan pled guilty and was convicted in this Court of distribution, receipt, possession, and attempted production of visual depictions of minors engaged in sexually explicit conduct. He is presently serving a 240-month sentence at FCI Ft. Dix, New Jersey. (CR 12-02901 RB, Doc. 174). Prior to his conviction, Plaintiff Khan was a pretrial detainee at the Doña Ana County Detention Center ("DACDC"). Mr. Khan's claims arise out of his pre-rial detention at DACDC. (Doc. 70 at 1, ¶ 4).

Plaintiff Khan filed his original, handwritten, Verified Civil Rights Complaint, consisting of a total of 73 pages, on December 14, 2015. (Doc. 1). Khan subsequently filed a number of

1

supplements and additional documentation in support of the Complaint. On January 27, 2016, the Court entered an Order striking Khan's Complaint, supplements, and exhibits, as violative of Rule 8 of the Federal Rules of Civil Procedure, and granted him leave to file an amended complaint that complied with Rule 8's pleading requirements. (Doc. 31). Plaintiff Khan filed his handwritten Verified Civil Rights Complaint (Amended) on February 5, 2016. (Doc. 35). Following sentencing on his federal criminal charges, Khan sought a stay of proceedings during the pendency of his transfer from DACDC to FCT Ft. Dix. (Doc. 53). The Court granted his requested stay of proceedings. (Doc. 57). Following Khan's transfer and expiration of the stay of proceedings, the Court entered a Memorandum Opinion and Order dismissing Khan's Amended Complaint for failure to state a claim on which relief can be granted under Rule 12(b)(6) and Section 1915(e)(2)(B). (Doc. 69). The Court also granted Khan leave to file a second amended complaint within 45 days of entry of the Memorandum Opinion and Order. (Doc. 69).

Khan filed his current Prisoner's Second Amended and Verified Civil Rights Complaint on November 7, 2016. (Doc. 70). Khan's Second Amended Complaint reorganizes his allegations and cites to specific constitutional provisions, but his claims remain legally and factually deficient.

**1. Unconstitutional Policies (Counts I and II)**

In Count I, Plaintiff Khan contends that thirteen of DACDC's rules or policies are facially unconstitutional:

(a) Prisoners may not have access or possess calendars;
(b) Prisoners may not have access to or possess clocks;
(c) Prisoners may not have access to or possess any hardcover books;
(d) Prisoners may not have access to or possess any newspapers;
(e) Prisoners may not have access to or possess any newspaper clippings;
(f) Prisoner will not sit on toilets;
(g) Prisoners will not sit on beds;
(h) Prisoners will access the recreation yard for exercise purposes for a maximum of 2.5 hours per calendar week;
(i) Prisoners will not be issued any undergarments;

2

(j) Prisoners will be issued only one uniform;
(k) Prisoners must be exposed to lights 24 hours per day;
(l) Prisoners must submit to a full strip-frisk search (a/k/a strip-visual search) when returning from Court or a Medical appointment;
(m) Prisoners are not permitted exercise outside of their cells except for the 2.5 hours provided in the recreation yard.

(Doc. 70 at 5-6). Count II of the Second Amended Complaint claims that the policies identified in Count I were adopted by Defendants Barela and the Board to "aid in the prosecution of anyone accused of a crime . . .and to make life unbearable for anyone that intended to try and defend on the merits." (Doc. 70 at 6, ¶ 21). Khan further claims that "[b]y removing all constitutionally protected comforts, Mr. Barela is effectively forcing persons to accept plea agreements regardless of guilt or innocence of the accused." (Doc. 70 at 6, ¶ 28).

To prevail on a facial challenge to an administrative regulation, the Plaintiff "'must establish that no set of circumstances exist under which the [regulation] would be valid.'" *Colorado Wild, Heartwood v. United States Forest Serv.,* 435 F.3d 1204, 1214 (10th Cir.2006) (quoting *Public Lands Council v. Babbitt,* 167 F.3d 1287, 1293 (10th Cir. 1999)). *See Davidson v. Mann,* 129 F.3d 700, 702 (2nd Cir. 1997) (applying same test to prison regulation) (citing *United States v. Salerno,* 481 U.S. 739, 745 (1987)). A plaintiff must also demonstrate that the prison policies impinged on a constitutional right and plaintiff suffered an injury as a result of the unconstitutional policy or regulation. *Faustin v. City & Cty. of Denver, Colo.*, 423 F.3d 1192, 1196 (10th Cir. 2005).

Khan does not identify any written policy, rule or regulation, nor does he identify a documentary source for any of the rules or policies he contends are unconstitutional. Although it renders the analysis of facial unconstitutionality more difficult, Khan's failure to identify a written rule or policy, alone, is not fatal to his claims. *See, e.g., Wells v. City and Cty. of Denver,* 257 F.3d 1132, 1150 (10th Cir. 2001) (precedent allows facial challenges to unwritten policies). However,

Khan's claim that "comforts" were "removed" does not rise to the level of deprivation of a constitutionally protected interest by a policy that is invalid in all circumstances. *Salerno,* 481 U.S. at 745. Further, even though Khan alleges that Defendant Barela "was informed that his policies were unconstitutional," Khan never articulates what provisions of the Constitution are violated by these policies, nor does he make any factual showing that he suffered any constitutional injury as a result of any of the policies. (Doc. 70 at 5-7, ¶¶ 18-29). Khan's Second Amended Complaint is insufficient to state a claim that any policies of DACDC are facially invalid or impinged on Khan's constitutional rights. *Faustin*, 423 F.3d at 1196.

### 2. Unconstitutional Conditions of Confinement (Counts III-V, VII- VIII, XIV, XV)

Khan asserts a number of claims based on the conditions of his confinement at DACDC. Specifically, in Count III, Plaintiff Khan alleges that he was deprived of his right to read hard cover books without the cover removed, newspapers and newspaper clippings. (Doc. 70 at 7, ¶¶ 31-40). In particular, Khan claims that the Board rejected a subscription to USA Today, a newspaper clipping his mother had sent him, and a hardcover book regarding application of the U.S. Sentencing Guidelines. (Doc. 70 at 7, ¶ 37).

In Count IV and Count V, Plaintiff asserts that he was deprived of access to direct and regular sunlight by Defendants. (Doc. 70 at 8). Khan alleges that prisoners were only afforded Tuesday, Thursday, and Saturday exercise time and that access to the exercise yard was at early morning hours when there was no sunlight. (Doc. 70 at 8, ¶ 43-47). Khan further claims that inadequate access to sunlight led to a Vitamin D deficiency, resulting in Plaintiff Khan being placed on high dose of Vitamin D supplements. (Doc. 70 at 8-9, ¶¶ 47-56).

In Count VII, Plaintiff clams that his rights were violated when Defendants deprived him of adequate clothing. (Doc. 70 at 12-13, ¶¶ 102-113). Khan alleges that, when he was booked

4

into DACDC, he was only issued one uniform that could be exchanged twice per week, was not issued any underwear, t-shirts or socks, and was not given any cold weather clothing. (Doc. 70 at 12, ¶¶ 102-106). He also alleges that, following a haircut, his uniform was covered with other inmates' hair and blood and he was not allowed to get another uniform until exchange day. (Doc. 70 at 12, ¶¶ 109-110).

In Count VIII, Khan claims that he was deprived of an adequate diet. (Doc. 70 at 13, ¶¶ 114-121). Khan alleges that he received numerous carbohydrates and very little protein. (Doc. 70 at 13, ¶¶ 120). Specifically, he claims that, on every Friday, because he advised medical personnel that he is allergic to fish, he received white pasta, white bread, butter, cake and lemon juice pack. (Doc. 70 at 13, ¶ 119). Khan also alleges that his food tasted like chlorine because the Defendants used the chemical chlorine in the dish wash procedures. (Doc. 70 at 14, ¶¶ 128-129). Khan contends that the inadequate diet and "reckless and sadistic use of Chlorine (a POISON)" constitute deliberate disregard for Plaintiff Khan's health. (Doc 70 at 13-14, ¶¶ 126, 127, 131, 132).

In Count XIV, Khan claims that the Defendants violated his constitutional rights by depriving him of dental floss. (Doc. 70 at 20-21, ¶¶ 223-233). Notably, Khan does not contend that he was deprived of all forms of dental hygiene or care but, instead, complains that the Board's policy of not permitting any dental floss in the correctional facility constituted a denial of a minimal measure of life's necessities. (Doc. 70 at 20, ¶¶ 223-224.

Lastly, in Count XV, Plaintiff alleges violation of rights by deprivation of adequate bedding. (Doc. 70 at 21-22). Specifically, Plaintiff Khan claims that, upon entry into DACDC, he was issued "(a) One decrepit mattress about ¼ inch thick, (b) One blanket, (c) One bed cover,

(d) one laundry bag" and that "[t]he mattress was so thin it was called 'Tortilla Flat.'" (Doc. 70 at 21, ¶¶ 235-236).

The Eighth Amendment standard provides the benchmark for pretrial detainee claims based on conditions of confinement. *See McClendon v. City of Albuquerque,* 79 F.3d 1014, 1022 (10th Cir. 1996). The Eighth Amendment requires jail officials "to provide humane conditions of confinement by ensuring inmates receive the basic necessities of adequate food, clothing, shelter, and medical care, and by taking reasonable measures to guarantee the inmates' safety." *Barney v. Pulsipher,* 143 F.3d 1299, 1310 (10th Cir. 1998). To hold a prison official personally liable for violating an inmate's right to humane conditions of confinement, a plaintiff must satisfy two requirements, consisting of an objective and a subjective component. *See id.*

To satisfy the objective component, a plaintiff must "produce objective evidence that the deprivation at issue was in fact sufficiently serious." *Mata v. Saiz*, 427 F.3d 745, 751 (10th Cir. 2005) (internal quotation marks omitted). Although what constitutes cruel and unusual punishment under the Eighth Amendment draws its meaning from the evolving standards of decency that mark the progress of a maturing society, the Constitution does not mandate comfortable prisons. *Rhodes v. Chapman,* 452 U.S. 337, 346-349 (1981) (quoting *Trop v. Dulles,* 356 U.S. 86, 101 (1958) (plurality opinion)). To the contrary, jail conditions may be "restrictive and even harsh" without violating constitutional rights. *Barney,* 143 F.3d at 1311. Thus, a plaintiff "must show that conditions were more than uncomfortable, and instead rose to the level of 'conditions posing a substantial risk of serious harm' to [his] health or safety." *DeSpain v. Uphoff*, 264 F.3d 965, 973 (10th Cir. 2001) (quoting *Farmer,* 511 U.S. at 834). In short, only deprivations denying the minimal civilized measure of life's necessities are sufficiently grave to form the basis of an Eighth Amendment claim. *Wilson v. Seiter,* 501 U.S. 294, 298 (1991); *accord Farmer v.*

*Brennan,* 511 U.S. 825, 834 (1994). This inquiry turns not only on the severity of the alleged deprivations, but also on their duration. *See Barney,* 143 F.3d at 1311.

Additionally, when, as in this case, a claim involves numerous alleged inhumane conditions, we must bear in mind that "[s]ome conditions of confinement may establish an Eighth Amendment violation 'in combination' when each would not do so alone, but only when they have a mutually enforcing effect that produces the deprivation of a single, identifiable human need such as food, warmth, or exercise." *Wilson,* 501 U.S. at 304. However, "[n]othing so amorphous as 'overall conditions' can rise to the level of cruel and unusual punishment when no specific deprivation of a single human need exists." *Id.* at 305.

The subjective component requires the prison official to have a sufficiently culpable state of mind. *Id.* at 297. In the context of prison conditions, the required state of mind is one of "deliberate indifference" to inmate health and safety. *Farmer,* 511 U.S. at 834. An official is liable only if he or she knows of and disregards an excessive risk to inmate health and safety. The official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists and must also draw the inference. *Id.* at 837. It is not sufficient to simply establish that the official should have known of the risk of harm. *Barney,* 143 F.3d at 1310.

Khan's allegations are troubling to the Court, especially those regarding the lack of proper clothing, the lack of sunlight, and the lack of nutritious food, or even food that did not taste from the dishwashing process. Nonetheless, the Court is bound by the standard set by the Supreme Court and the Tenth Circuit. Under that stringent standard, Khan's allegations do not state an unconstitutional confinement claim, as, even if proven, they would not rise to the level of a substantial risk of serious harm to his health or safety. *See, e.g.*, *Green v. Denning,* 465 F. App'x. 804, 807 n. 2 (10th Cir.2012) (noting a claim based on the denial of dental floss was one of the

examples of frivolous prisoner suits cited in the legislative history of the Prisoner Litigation Reform Act); *Estrada v. Kruse,* 38 F. App'x 498 (10th Cir. 2002) (allegations that a pretrial detainee was issued minimal bedding do not rise to the level of a constitutional deprivation). Indeed, the Tenth Circuit has found conditions sufficiently serious to state an Eighth Amendment claim only based on allegations much more severe than the ones set forth here. *See, e.g.*, *Gee v. Pacheco*, 627 F.3d 1178, 1189 (10th Cir. 2010) (concluding that allegations the plaintiff "had not had food or water for more than 24 hours ... and both Defendants restrained him with a stun belt, belly chains, handcuffs, and a black box covering the handcuffs, which prevented him from accessing the food and water provided to the other prisoners being transported" were sufficiently serious to satisfy objective component of an Eighth Amendment claim); *Fogle v. Pierson*, 435 F.3d 1252, 1259–60 (10th Cir. 2006) (concluding that denying the plaintiff any outdoor exercise for three years constituted a sufficiently serious deprivation); *McBride v. Deer*, 240 F.3d 1287, 1291–92 (10th Cir. 2001) (concluding that forcing the plaintiff to live in a feces-covered cell for three days was a sufficiently serious condition of confinement). Even considered collectively, the conditions described by Plaintiff do not constitute a "sufficiently serious" deprivation to satisfy the objective component of the relevant test. *Covalt v. Inmate Servs. Corp.*, 658 F. App'x 367, 369–70 (10th Cir. 2016). Khan's Second Amended Complaint thus fails to state an unconstitutional conditions of confinement claim.

### 3. Fourth Amendment Strip Search Claim (Count VI).

Count VI of the Second Amended Complaint alleges that Plaintiff Khan was subjected to strip-frisk or pat-down searches whenever he returned to DACDC from an outside court hearing or a medical procedure. (Doc. 70 at 10-12). Plaintiff Khan claims that these searches violated his rights to due process and to be free from unreasonable searches and seizures because DACDC did

not have reasonable suspicion or probable cause to believe that he was in possession of contraband or dangerous materials. (Doc. 70 at 10-12, ¶¶ 70-100).

Detainees being booked into correctional facilities have Fourth Amendment constitutional rights to be free from unreasonable searches and seizures. However, not all strip searches are unconstitutional. *Foote v. Spiegel*, 118 F.3d 1416, 1425 (10th Cir. 1997). A policy or practice of strip searching all arrestees as part of the process of bringing them into the general population of a detention facility, even without reasonable suspicion to believe that they may be concealing contraband, is constitutionally permissible. A practice impinging on an inmate's constitutional rights will be upheld where it is reasonably related to legitimate penological interests. *Turner v. Safley,* 482 U.S. 78, 89 (1987).

The security concerns inherent in a situation where the arrestee will be placed in the general prison population are obvious. *Archuleta v. Wagner,* 523 F.3d 1278, 1284 (10th Cir. 2008). Maintaining safety and order at detention centers is reasonably related to legitimate penological interests and requires the expertise of correctional officials, who must have substantial discretion to devise reasonable solutions to problems. *Turner,* 482 U.S. at 89. Therefore, a strip search of a pretrial detainee is constitutionally permissible, at least where the strip search is no more intrusive than the one the Supreme Court upheld in *Bell v. Wolfish,* 441 U.S. 520, 558 (1979). *See Powell v. Barrett*, 541 F.3d 1298 (11th Cir. 2008).

In *Bell*, the Supreme Court, upheld a rule requiring pretrial detainees in federal correctional facilities "to expose their body cavities for visual inspection as a part of a strip search conducted after every contact visit with a person from outside the institution[s]," deferring to the judgment of correctional officials that the inspections served not only to discover but also to deter the smuggling of weapons, drugs, and other prohibited items. 441 U.S. at 558; *see also Block v.*

*Rutherford,* 468 U.S. 576, 586–587 (1984). The Supreme Court has stated that correctional officials must be permitted to devise reasonable search policies to detect and deter the possession of contraband in their facilities. *Hudson v. Palmer,* 468 U.S. 517, 522–523 (1984); *Block,* 468 U.S. at 584–585.

Plaintiff Khan claims that, when he was taken out of the facility to attend a colonoscopy procedure and then returned to the facility after the procedure, he was "forced to disrobe and excessively manipulate his genitalia in the presence of an officer." (Doc. 70 at 10, ¶¶ 71-81). He also claims that, on other occasions when he was transported to court hearings and proceedings, he was subjected to pat searches. (Doc. 70 at 11-12, ¶¶ 82-96). Khan contends that these searches violated his constitutional rights because they were conducted without reasonable suspicion. (Doc. 70 at 12, ¶ 97).

Khan's contentions that strip and pat searches are constitutionally permissible only in the presence of probable cause or reasonable suspicion are contrary to established precedent. *See Turner,* 482 U.S. at 89. Nor do his factual allegations disclose any searches by prison officials that were more intrusive than the searches approved in *Bell. See, Powell,* 541 F. 3d at 1314. Accordingly, Count VI does not state a factually or legally sufficient claim of constitutionally unreasonable searches and seizures.

### 4. Religious Exercise and Establishment Violations (Count IX, X, XI, XII).

Counts IX and X of the Second Amended Complaint claim that Defendants burdened Plaintiff Khan's religious exercise without legitimate penological justification, in violation of the Religious Land Use and Institutionalized Persons Act of 200 ("RLUIPA) and the First and Fourteenth Amendments. (Doc. 70 at 14). Khan's allegations do not state a RLUIPA or a constitutional claim for relief.

Prisoners and detainees do not forfeit all constitutional protections by reason of their confinement in prison." *Bell,* 441 U.S. at 545; *Turner,* 482 U.S. at 84; *Jones v. North Carolina Prisoners' Labor Union, Inc.,* 433 U.S. 119, 129 (1977). Inmates clearly retain protections afforded by the First Amendment, including its directive that no law shall prohibit the free exercise of religion or establish a religion. See *Pell v. Procunier,* 417 U.S. 817, 822 (1974); *Cruz v. Beto,* 405 U.S. 319 (1972) (*per curiam*).

When a religious exercise claim under either RLUIPA or the First Amendment is identified, the next step is to determine whether the government has imposed a "substantial" burden on that exercise. This inquiry must focus on the coercive impacts of the government's actions on the individual claimant's ability to engage in a religious exercise. The Tenth Circuit has found a burden to be substantial where: the government (1) requires the plaintiff to participate in an activity prohibited by a sincerely held religious belief, (2) prevents the plaintiff from participating in an activity motivated by a sincerely held religious belief, or (3) places considerable pressure on the plaintiff to violate a sincerely held religious belief—for example, by presenting an illusory or Hobson's choice where the only realistically possible course of action available to the plaintiff trenches on sincere religious exercise. *Abdulhaseeb v. Calbone*, 600 F.3d 1301, 1314-15 (10th Cir. 2010); *see also Lyng v. Northwestern Indian Cemetery Protective Ass'n,* 485 U.S. 439, 450 (1988); *Thomas v. Review Bd. of Ind. Emp't Sec. Div.*, 450 U.S. 707, 716–18 (1981); *Yellowbear v. Lampert,* 741 F.3d 48, 55 (10th Cir. 2014).

As a threshold matter, when faced with either a First Amendment claim or a RLUIPA claim, a court must inquire as to whether the prisoner has fulfilled his burden of alleging sufficient facts to indicate that his ability to practice his "sincerely-held religious belief" has been "substantially burdened." *Gladson v. Iowa Dep't of Corr.,* 551 F.3d 825, 833 (8th Cir. 2009). A

plaintiff who relies on the RLUIPA must demonstrate that the "substantial burden" is more than a mere inconvenience. *Abdulhaseeb,* 600 F.3d at 1316. If the answer to the substantial burden inquiry is negative, the court need not examine the claim further because the plaintiff is unable to prevail without showing a substantial burden. *Gladson*, 551 F.3d at 833.

In Counts IX and X of his Second Amended Complaint, Plaintiff Khan claims that prison officials violated his constitutional right to free exercise of his religion. (Doc. 70 at 14-15, ¶¶ 134-151. The only Defendants identified by Khan are prison Chaplains Bill Stickles and John Doe (Beam). (Doc. 70 at 2-3, ¶¶ 7-8). Khan states that he is a Muslim who holds Islam to be his religious belief. (Doc. 70 at 14, ¶¶ 134, 135). Khan claims that Defendants did not provide him with access to a clock, prayer schedule, or Muslim calendar so that he could determine prayer schedules and when Ramadan was to be observed. (Doc. 70 at 15, ¶¶ 136-141). Khan also asserts that, on one occasion, when told by Chaplain Bill Stickles that DACDC would accommodate Ramadan, he received a loaf of bread and three slices of ham and, because "such a meal was nutritionally inadequate," and thus declined to participate in Ramadan (Doc. 70 at 15, ¶¶ 143-149).

Counts XI and XII claim that Defendants established Christianity as the religion of DACDC, discriminated against Islam, and utilized coercion and force to encourage Plaintiff Khan to ascribe to Christianity, in violation of the First, Fifth, and Fourteenth Amendments. (Doc. 70 at 15-16). The essence of Khan's religious establishment claims is that DACDC gave preferential treatment to Christian volunteers, practices, and events. (Doc. 70 at 16-17, ¶¶ 153-168, 177-178). Khan also asserts that, on three occasions over a four-year period, Khan was not permitted to leave the area at times when Christian evangelical sermons were being delivered, "forcing" him to be evangelized. (Doc. 70 at 17, ¶¶ 169-176). Khan also claims that, although permitted to meet with

a Muslim volunteer during his detention, greater restrictions were placed on him than on Christian prisoners meeting with Christian volunteers. (Doc. 70 at 16, ¶ 156-161).

Khan's allegations do not show that prison officials unconstitutionally burdened Khan's sincerely held religious beliefs. Although Khan claims that he decided not to participate in Ramadan because the meals given were incorrect and nutritionally inadequate, these allegations do not show that prison officials prevented him from participating in Ramadan. *Abdulhaseeb,* 600 F.3d at 1314-15. Nor do his allegations that he was not allowed to leave the pod and go to the recreation area on three occasions when Christian sermons were being given demonstrate, as they must, that he was required by prison officials to participate in an activity prohibited by his sincerely held religious beliefs. *Id.* Khan's allegations thus do not state a claim for violation of RUILPA or the First Amendment. S*ee Lyng,* 485 U.S. at 450; *Thomas*, 450 U.S. at 716–18; *Yellowbear,* 741 F.3d at 55. To the extent that Khan relies on the Fourteenth Amendment, prison restrictions, such as those placed on the possession of calendars, clocks, and schedules, similarly do not raise constitutionally protected procedural or substantive due process concerns. *See, e.g., Gowadia v. Stearns*, 596 F. App'x 667, 672 (10th Cir. 2014); *Kennedy v. Blankenship*, 100 F.3d 640, 642-43 (8th Cir. 1996). Khan's Second Amended Complaint thus does not state a religious exercise or establishment claim.

### 5. Deliberate Indifference to Serious Medical Needs (Count XIII).

Count XIII of Plaintiff Khan's Second Amended Complaint claims that Defendants Barela, Duran, Rush, Bright, and Corizon were deliberately indifferent to Khan's serious medical needs in violation of the Fifth, Eighth, and Fourteenth Amendments. (Doc. 70 at 17-18). Specifically, Khan alleges that he had previously been diagnosed by a neuropsychologist with depression and attention deficit disorder. He sought treatment at DACDC and was evaluated by Defendant Bright

in the mental health unit. However, because he was "clearly and unreasonably paranoid" that any mental health care provider other than a psychiatrist "would become a witness for the prosecution in Mr. Khan's pending criminal case," he refused to see any counselor in the mental health unit. Khan complained to Defendants Barela and Rush, and non-party Lt. Olivas about his need to be seen by a psychiatrist. He was eventually seen by the prison psychiatrist, Dr. Castillo, who prescribed Prozac for him. (Doc. 70 at 18-19, ¶¶ 185-212).

An Eighth Amendment claim for deliberate indifference to serious medical needs involves a two-pronged inquiry, comprised of an objective component and a subjective component. *Self v. Crum,* 439 F.3d 1227, 1230 (10th Cir. 2006). With respect to the objective component, a medical need is serious if it is "one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Ramos v. Lamm,* 639 F.2d 559, 575 (10th Cir. 1980) (internal quotation and citation omitted). The question is not limited to whether the inmate's symptoms render a medical need sufficiently serious, but also extends to whether the potential harm to the inmate is sufficiently serious. *Mata v. Saiz,* 427 F.3d 745, 752 (10th Cir. 2005).

Under the subjective component, the defendant must have a sufficiently culpable state of mind. *Farmer*, 511 U.S. at 834; *see also Self*, 439 F.3d at 1230–31. In other words, the plaintiff must establish that the defendant "knew he faced a substantial risk of harm and disregarded that risk, by failing to take reasonable measures to abate it." *Hunt v. Uphoff*, 199 F.3d 1220, 1224 (10th Cir.1999) (internal citation and quotation omitted). Unlike the objective component, the symptoms displayed by the prisoner are relevant to the subjective component of deliberate indifference. *Mata*, 427 F.3d at 753.

With regard to the subjective component, the question for consideration by the Court is:

"were the symptoms such that a prison employee knew the risk to the prisoner and chose (recklessly) to disregard it?" *Martinez v. Beggs*, 563 F.3d 1082, 1089 (10th Cir. 2009) (quoting *Mata*, 427 F.3d at 753). Prison officials who had actual knowledge of a substantial risk to inmate health or safety may be found free from liability if they responded reasonably to the risk, even if the harm ultimately was not averted. *Howard v. Waide*, 534 F.3d 1227, 1239 (10th Cir. 2008) (quoting *Farmer*, 511 U.S. at 844–45). An official responds to a known risk in an objectively unreasonable manner if he knew of ways to reduce the harm but knowingly or recklessly declined to act. *Howard*, 534 F.3d at 1239–40.

Consequently, accidental or inadvertent failure to provide adequate medical care, or negligent diagnosis or treatment of a medical condition do not constitute a medical wrong under the Eighth Amendment. *See Estelle v. Gamble*, 429 U.S. 97, 105-06 (1976). Moreover, a difference of opinion between the prison's medical staff and the inmate as to the diagnosis or treatment which the inmate receives does not support a claim of cruel and unusual punishment. *See, e. g., Smart v. Villar*, 547 F.2d 112, 114 (10th Cir. 1976); *Self,* 439 F.3d at 1231; *Thompson v. Gibson,* 289 F.3d 1218, 1222 (10th Cir. 2002).

The Court concludes that Plaintiff Khan's allegations evince a serious medical need, meeting the objective component. However, the Second Amended Complaint does not show deliberate indifference on the part of any official and thus fails to meet the subjective component of an Eighth Amendment claim. DACDC's attempt to provide Khan with mental health treatment by a counselor, rather than a psychiatrist, and Khan's refusal of that treatment, do not demonstrate that any Defendant was deliberately indifferent to Khan's medical needs. *See Smart*, 547 F.2d at 114; *Self,* 439 F.3d at 1231. Nor do the allegations that Defendants failed to adequately supervise Defendant Bright or to provide a "fail safe" mechanism to ensure prisoners get needed medical

care show that any official knew of a substantial risk to Khan's health or safety and recklessly chose to disregard it. *Martinez v. Beggs*, 563 F.3d at 1089. Khan's allegations that prison officials failed to meet a standard of medical care might support a state-law medical negligence claim, but do not rise to the level of unconstitutional indifference to Khan's serious medical needs. *Estelle*, 429 U.S. at 105-06. Khan's Second Amended Complaint thus fails to state an Eighth Amendment claim for deliberate indifference to serious medical needs.

      **6. Denial of Access to Court (Count XIV, XVII).**

In Counts XVI and XVII, Plaintiff Khan alleges that his constitutional right to bring "non-frivolous claims" in the courts was violated by Defendants Chris Barela and the Board of County Commissioners of Dona Ana County. (Doc. 70 at 22-25). Khan claims that Defendants impeded his right to access the courts by failing to provide him trained legal assistance and legal resources. (Doc. 70 at 23-24, ¶¶ 249-265). Khan also alleges that Defendants intentionally interfered with a case that he filed in the Third Judicial District Court of the State of New Mexico. (Doc. 70 at 24, ¶¶ 266-271).

The right of access to the courts is a fundamental constitutional right. *Bounds v. Smith,* 430 U.S. 817, 828 (1977). A state's affirmative obligation to assure its inmates access to the courts through legal assistance requires it to provide persons trained in the law to aid inmates in the preparation of state or federal petitions for writs of habeas corpus or initial pleadings in civil rights actions challenging conditions of current confinement. *Hawkinson v. Montoya*, 479 F. Supp. 2d 1164, 1173 (D. Colo. 2007).

Other than habeas corpus or civil rights actions regarding current confinement, a state has no affirmative constitutional obligation to assist inmates in general civil matters, but may not erect barriers that impede the right of access of incarcerated persons. *Carper v. DeLand,* 54 F.3d 613,

616–17 (10th Cir. 1995) (internal quotations and citations omitted) (emphasis added). An inmate alleging denial of access to the courts must allege an actual injury. *Lewis v. Casey,* 518 U.S. 343, 349 (1996). To establish actual injury, the inmate must show that "the denial of legal resources hindered the prisoner's efforts to pursue a nonfrivolous claim." *Id.* at 356. *Penrod v. Zavaras,* 94 F.3d 1399, 1403 (10th Cir. 1996) (citing *Lewis,* 518 U.S. at 351).

Khan's Second Amended Complaint does not state a constitutional claim for denial of access to the courts. Khan argues that, if he had been afforded better law library access and legal assistance by a person trained in the law, his prison condition complaints would not have been dismissed for failure to state a claim and he would have known not to initiate a pro se habeas corpus proceeding. (Doc. 70 at 23-24, ¶¶ 252-257, 269). Khan's allegations that the Court dismissed Khan's claims do not demonstrate that prison officials hindered his efforts to pursue a nonfrivolous claim. *Lewis,* 518 U.S. at 349, 356. Khan's allegations are factually insufficient to state a claim for relief. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007); *Dunn v. White,* 880 F.2d 1188, 1190 (10th Cir. 1989).

Plaintiff Khan also claims that he was deprived of his constitutional right of access with respect to a tort case filed in the State of New Mexico Third Judicial District Court, *Khan v. Getz*, No. D-307-CV-2016-1161. (Doc. 70 at 24). Khan claims that the case was dismissed when he was unable to serve the defendants because he could not look up any phone numbers for process servers and there was no way to contact the Dona Ana Sheriff's Office to inquire about their rates and procedures to serve process. (Doc. 70 at 24). The Court takes judicial notice of the official record in *Khan v. Getz*, No. D-307-CV-2016-1161. *See United States v. Ahidley,* 486 F.3d 1184, 1192 n. 5 (10th Cir. 2007) (the Court may take judicial notice of publicly filed records in this court and other courts concerning matters that bear directly upon the disposition of the case at hand).

17

The records indicate that Khan was granted free process, including service of process on the defendants by the Dona Ana County Sheriff's Office, and that the Complaint was served on three defendants by the Sheriff's Office. *See Khan v. Getz*, August 23, 2016 Amended Order on Application for Free Process, and June 14, 2017 Summons Returns for Defendants Getz, Barela, and Dona Ana County Board of County Commissioners. The case was dismissed for lack of prosecution and Plaintiff Khan did not seek to reinstate the case within the permitted time, perhaps because he had been transferred and had not kept the Court apprised of his address. *See Khan v. Getz,* May 25, 2017 Order of Dismissal for Lack of Prosecution and June 5, 2017 returned mail. The State court's dismissal for lack of prosecution by Plaintiff Khan does not establish that prison officials erected barriers or hindered Khan's efforts to pursue his State court claim. *Penrod,* 94 F.3d at 1403. Khan's Second Amended Complaint does not state a constitutional claim for denial of access to the courts.

### 7. Pending Motion.

Also pending before the Court is Plaintiff Khan's Renewed Motion for Order to Issue Summonses filed December 31, 2018. (Doc. 82). The Court will deny Plaintiff's Motion as moot in light of the dismissal of Plaintiff's claims.

**IT IS ORDERED:**

(1) the Plaintiff's Renewed Motion for Order to Issue Summonses (Doc. 82) is DENIED; and

(2) the Prisoner's Second Amended and Verified Civil Rights Complaint filed by Plaintiff Erik Khan on November 7, 2016 (Doc. 70) is **DISMISSED** with prejudice for failure to state a claim on which relief can be granted.

_____
UNITED STATES DISTRICT JUDGE