IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

ERIK KAHN,

       **Plaintiff,**

v.                                                                          No. 15-cv-1151 MV/SMV

CHRIS BARELA, BOARD OF COUNTY
COMMISSIONERS OF DOÑA ANA COUNTY,
ARAMARK CORPORATION,
BILL STICKLES, and DAVID BEAM,

       **Defendants.[1]**

## <u>MAGISTRATE JUDGE'S</u><br><u>PROPOSED FINDINGS AND RECOMMENDED DISPOSITION</u>

THIS MATTER is before me on Defendants Beam and Stickles's Rule 12(b)(1)

and 12(b)(6) Motion to Dismiss, filed on July 1, 2020. [Doc. 112]. Plaintiff's response was

docketed on July 20, 2020. [Doc. 115].[2] Defendants filed no reply, and the time for doing so has

passed. The Honorable Martha Vázquez, United States District Judge, referred this matter to me

for analysis and a recommended disposition. [Doc. 13]. Having considered the parties'

submissions, the record, and the relevant law, and being otherwise fully advised in the premises, I

find that Defendants have failed to show that the claims against them must be dismissed. Therefore,

I recommend that the presiding judge deny the Motion and allow the claims against Defendants to

proceed. I do so for three reasons. First, Defendants Beam and Stickles, in their roles as chaplains

---

[1] This caption reflects the Defendants listed in the Third Amended Complaint, except that Plaintiff has also substituted
Defendant David Beam for the John Doe Defendant. [Docs. 100, 109].
[2] Under the prison mailbox rule, I find that Plaintiff's response was timely filed on July 14, 2020, when he deposited
it with the institution's first-class mail system. [Doc. 115] at 31–32. *See Houston v. Lack*, 487 U.S. 266 (1988).

at the Doña Ana County Detention Center ("DACDC"), are state actors for purposes of § 1983, and thus the Rule 12(b)(1) portion of the motion should be denied. *See West v. Atkins*, 487 U.S. 42, 55–56 (1988); *Makin v. Colo. Dep't of Corrs.*, 183 F.3d 1205, 1209 (10th Cir. 1999); *Ralston v. Cannon*, 884 F.3d 1060, 1065, n.5 (10th Cir. 2018). Second, Defendants have not persuaded me that Plaintiff has failed to allege sufficient facts to make his claim for relief plausible, and therefore the Rule 12(b)(6) portion of the motion should be denied. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Finally, portions of the Rule 12(b)(6) argument should be construed as a Rule 56 motion for summary judgment. *See* Fed. R. Civ. P. 56. These should be denied as premature because Plaintiff has not had the opportunity for discovery through a *Martinez* Report. *See id.*; *Martinez v. Aaron*, 570 F.2d 317, 319–20 (10th Cir. 1978) (affirming the propriety and necessity of such reports).

## Background

Plaintiff filed his Third Amended Complaint ("Complaint") pro se on May 1, 2020. [Doc. 100]. He seeks damages for violations of his constitutional rights while detained at DACDC over the course of four years. He brings these claims under 42 U.S.C. § 1983 against multiple defendants, two of whom are Defendants Beam and Stickles. *Id.* In their Motion to Dismiss, Defendants claim that the Complaint must be dismissed for lack of subject-matter jurisdiction under Rule 12(b)(1) because, as chaplains operating under a private contract, they do not act "under color of state law" for purposes of claims arising under § 1983. [Doc. 112] at 2. Defendants also contend that Plaintiff's Complaint fails to state a claim under Rule 12(b)(6) because Plaintiff fails to allege the facts necessary to support his claim under § 1983. *Id.* at 2–3.

As to Defendants Beam and Stickles, Plaintiff's Complaint asserts violations of his rights (1) to freely exercise his religious beliefs as a Muslim, (2) to be free from the governmental

2

establishment of the Christian religion, and (3) to enjoy the equal protection of the law. *See* [Doc. 100]. Plaintiff supports these claims with twelve pages of factual allegations. *Id.* at 3, 14–19, 23–27. Regarding the Religious Exercise claim, Plaintiff alleges that Beam and Stickles either denied or failed to assist him with his requests for a prayer rug, calendar, clock, and a religious meal accommodation. *Id.* at 14, ¶¶ 90–93. Plaintiff further alleges that after years of asking, Stickles told him that he could have a dietary accommodation during Ramadan. *Id.* at 14, ¶¶ 90–101. Plaintiff signed up for the special meals but received ham, which Muslims are not permitted to eat. *Id.*

Regarding his claims under the Establishment and Equal Protection Clauses, Plaintiff's Complaint alleges that Defendants recruited only Christian volunteers and approved 45 such volunteers but only one Muslim volunteer. *Id.* at 15, ¶¶ 102–03, 105. As a result, Christian volunteers were made available to Christian inmates over 200 times, while Plaintiff was able to meet with the Muslim volunteer only five times. *Id.* at 16, ¶ 106. During one of those visits Plaintiff was handcuffed, whereas Christian inmates were never handcuffed for meetings with Christian volunteers. *Id.* at ¶ 107. Plaintiff alleges that the employee who cuffed him said the order to do so came "from the top." *Id.*

Plaintiff further alleges that Defendants maintained a religious library that contained only Christian literature and that they refused to keep non-Christian texts in the library. *Id.* at ¶¶ 108–09. As a result, Plaintiff had to ask his family to purchase a Quran for him. *Id.* He further alleges that Christian inmates got movie nights at "the Chapel," with nothing similar offered for Muslims. *Id.* at 18, ¶ 122. Additionally, Christian volunteers were permitted to roam the facility without officer escorts, enter the inmates' living quarters, and preach while authorities forced inmates to pay attention. *Id.* at 16–17, ¶¶ 112–14. Similar access was not granted to the sole Muslim volunteer.

3

*Id.* Plaintiff alleges that Christian inmates were routinely permitted to hold nightly prayer circles and completely disregard lock-down orders; Muslim inmates were never given such privileges. *Id.* at ¶ 123. Finally, Plaintiff alleges that Defendants Beam and Stickles provided religious Christmas cards free of charge but offered no religiously neutral options. *Id.* at ¶ 124.

### Standard for Motions to Dismiss Under Rule 12(b)(1)

"Federal courts are courts of limited jurisdiction; they are empowered to hear only those cases authorized and defined in the Constitution which have been entrusted to them under a jurisdictional grant by Congress." *Henry v. Off. of Thrift Supervision*, 43 F.3d 507, 511 (10th Cir. 1994) (citations omitted). A plaintiff generally bears the burden of demonstrating the court's jurisdiction to hear his or her claims. *See Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 104 (1998) ("[T]he party invoking federal jurisdiction bears the burden of establishing its existence."). Rule 12(b)(1) allows a party to raise the defense of the court's "lack of subject-matter jurisdiction" by motion. Fed. R. Civ. P. 12(b)(1).

The Tenth Circuit has held that motions to dismiss for lack of subject-matter jurisdiction "generally take one of two forms: (1) a facial attack on the sufficiency of the complaint's allegations as to subject matter jurisdiction; or (2) a challenge to the actual facts upon which subject matter jurisdiction is based." *Ruiz v. McDonnell*, 299 F .3d 1173, 1180 (10th Cir. 2002).

> When reviewing a factual attack on subject matter jurisdiction, a district court may not presume the truthfulness of the complaint's factual allegations. A court has wide discretion to allow affidavits, other documents, and a limited evidentiary hearing to resolve disputed jurisdictional facts under Rule 12(b)(1). In such instances, a court's reference to evidence outside the pleadings does not convert the motion to a Rule 56 motion.

*Holt v. United States*, 46 F.3d 1000, 1003 (10th Cir. 1995) (internal citations omitted). As the United States Court of Appeals for the Fifth Circuit has stated:

> [T]he trial court may proceed as it never could under 12(b)(6) or Fed. R. Civ. P. 56.
> Because at issue in a factual 12(b)(1) motion is the trial court's jurisdiction[—]its
> very power to hear the case[—]there is substantial authority that the trial court is
> free to weigh the evidence and satisfy itself as to the existence of its power to hear
> the case. In short, no presumptive truthfulness attaches to plaintiff's allegations,
> and the existence of disputed material facts will not preclude the trial court from
> evaluating for itself the merits of jurisdictional claims.

*Williamson v. Tucker*, 645 F.2d 404, 412–13 (5th Cir. 1981) (quoting *Mortensen v. First Fed. Sav. & Loan Ass'n*, 549 F.2d 884, 891 (3d Cir. 1977)). When making a Rule 12(b)(1) motion, a party may go beyond the allegations in the complaint to challenge the facts upon which jurisdiction depends and may do so by relying on affidavits or other evidence properly before the court. *See New Mexicans for Bill Richardson v. Gonzales*, 64 F.3d 1495, 1499 (10th Cir. 1995); *Holt*, 46 F.3d at 1003. In those instances, a court's reference to evidence outside the pleadings does not necessarily convert the motion to a Rule 56 motion for summary judgment. *See Holt*, 46 F.3d at 1003 (citing *Wheeler v. Hurdman*, 825 F.2d 257, 259 n.5 (10th Cir. 1987)).

### Standard to State Claim Under § 1983

Section 1983 of Title 42 of the United States Code provides that anyone "who, under color of [state law] . . . subjects, or causes to be subjected, any . . . person within the jurisdiction [of the United States] to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law." 42 U.S.C. § 1983. Section 1983 creates only the right of action; it does not create any substantive rights; substantive rights must come from the Constitution or federal statute. *See Spielman v. Hildebrand*, 873 F.2d 1377, 1386 (10th Cir. 1989). Rather, § 1983 authorizes an injured person to assert a claim for relief against a person who, acting under color of state law, violated the claimant's federally protected rights.

To state a claim upon which relief can be granted under § 1983, a plaintiff must allege: "(1) a violation of rights protected by the federal Constitution or created by federal statute or regulation, (2) proximately caused (3) by the conduct of a 'person' (4) who acted under color of [state law]." *Summum v. City of Ogden*, 297 F.3d 995, 1000 (10th Cir. 2002); *see also West*, 487 U.S. at 48. "The 'under color of state law' requirement is 'a jurisdictional requisite for a § 1983 action.'" *Jojola v. Chavez*, 55 F.3d 488, 492 (10th Cir. 1995) (quoting *Polk County v. Dodson*, 454 U.S. 312, 315 (1981)). Therefore, it is appropriate to assess the "under color of state law" requirement when ruling on a Rule 12(b)(1) motion to dismiss for lack of subject-matter jurisdiction.

## Standard Governing Claims Against Private Actors Under § 1983

The U.S. Supreme Court has clarified that the "under color of state law" requirement for a § 1983 claim and the standard for "state action," as required in a Fourteenth Amendment claim, are identical. *Lugar v. Edmondson Oil Co., Inc.*, 457 U.S. 922, 929 (1982). Thus, the two terms are used interchangeably. *See id.* The Tenth Circuit has outlined its approach to the question of state action in § 1983 claims: (1) the public function test, (2) the nexus test, (3) the symbiotic relationship test, and (4) the joint action test.

> The [Supreme] Court has taken a flexible approach to the state action doctrine, applying a variety of tests to the facts of each case. In some instances, the Court has considered "whether there is a sufficiently close nexus between the State and the challenged action of the regulated entity so that the action of the latter may be fairly treated as that of the State itself." The Court has also inquired whether the state has "so far insinuated itself into a position of interdependence" with the private party that there is a "symbiotic relationship"[3] between them. In addition, the Court has held that if a private party is a "willful participant in joint activity with the State or its agents," then state action is present. Finally, the Court has ruled that a private

---

[3] Though the Tenth Circuit rightly points to *Burton v. Wilmington Parking Authority*, 365 U.S. 715 (1961), where the Supreme Court used the "symbiotic relationship" test, it is worth noting that the Supreme Court has not relied upon this test again to support a finding of state action. *See* Ivan E. Bodensteiner & Rosalie Berger Levinson, *State and Local Government Civil Rights Liability*, § 1:4. Defendants—Private individuals and state action requirement, ¶ 11 (updated July 2020).

entity that exercises "powers traditionally exclusively reserved to the State" is engaged in state action.

        Under each of these four tests, "the conduct allegedly causing the deprivation of a federal right" must be "fairly attributable to the State." In order to establish state action, a plaintiff must demonstrate that the alleged deprivation of constitutional rights was "caused by the exercise of some right or privilege created by the State or by a rule of conduct imposed by the State or by a person for whom the State is responsible."

*Johnson v. Rodrigues*, 293 F.3d 1196, 1202–03 (10th Cir. 2002) (quoting *Gallagher v. "Neil Young Freedom Concert"*, 49 F.3d 1442, 1447 (10th Cir. 1995) (citations omitted).[4] Therefore, "the only proper defendants in a Section 1983 claim are those who 'represent [the state] in some capacity, whether they act in accordance with their authority or misuse it.'" *Gallagher*, 49 F.3d at 1447 (quoting *Nat'l Collegiate Athletic Ass'n v. Tarkanian*, 488 U.S. 179, 191 (1988)).[5]

## 1. Medical Personnel

In *West*, the Supreme Court found that a private doctor who contracted with a state prison to provide medical services to inmates was vulnerable to suit under § 1983 as a state actor because the state had delegated its constitutional duty to provide medical services to him. 487 U.S. at 55–56. ("The State bore an affirmative obligation to provide adequate medical care to West [an inmate];[6] the State delegated that function to respondent Atkins; and respondent voluntarily assumed that obligation by contract." *Id.* at 56.) Since the Supreme Court's nearly unanimous[7] decision in *West* in 1988, numerous Courts of Appeals have continued to follow the precedent in the context of medical staff providing services for inmates. *See Harrison v. Ash*, 539 F.3d 510, 521

---

[4] The court in *Johnson* proceeded to find no state action when examining the role of a private adoption agency. 293 F.3d at 1208.

[5] Defendants point to *Jojola v. Chavez*, 55 F.3d 488 (10th Cir. 1995). In *Jojola*, the court affirmed the district court's dismissal for failure to state a claim because the actions of a school custodian, who was an employee of the public school, could not be found to be "under color of law" where he molested a student. *Id.* at 494. Since the facts in *Jojola* are not very analogous to this case, there is no need to quote it further.

[6] The Court also noted that *West* was not free to leave the confines of the prison to find his own doctor, even if he had wanted to. *West*, 487 U.S. at 44.

[7] Justice Scalia authored a concurring opinion.

(6th Cir. 2008); *Belbachir v. Cnty. of McHenry*, 726 F.3d 975, 978 (7th Cir. 2013); *Craig v. Floyd Cnty., Ga.*, 643 F.3d 1306, 1310 (11th Cir. 2011).[8]

Some circuits have gone a step further and found medical providers to be state actors, even absent a contractual relationship with the state, when they assumed the state's constitutional duty by providing medical care to prisoners. *See Conner v. Donnelly*, 42 F.3d 220, 225–26 (4th Cir. 1994); *Carl v. Muskegon Cnty.*, 763 F.3d 592, 595–98 (6th Cir. 2014) (applying same standard for pretrial detainees and stating "[a] state may not escape § 1983 liability by contracting out or delegating its obligation to provide medical care to inmates") (quoting *West*, 487 U.S. at 56).[9] Additionally, in this context, private physicians treating inmates are expected to use their own clinical judgment to perform their duties, but this fact does not change the analysis. *See Jensen v. Lane Cnty.*, 222 F.3d 570, 575 (9th Cir. 2000).

### 2. Chaplains and Religious Organizations

"Even though they are incarcerated, prisoners retain fundamental constitutional rights. These rights include the reasonable opportunity to pursue one's religion as guaranteed by the free exercise clause of the First Amendment." *Makin*, 183 F.3d at 1209 (10th Cir. 1999) (citing *Turner v. Safley*, 482 U.S. 78, 84 (1987); *O'Lone v. Shabazz*, 482 U.S. 342, 348 (1987); *Mosier v. Maynard*, 937 F.2d 1521, 1525 (10th Cir. 1991)). What constitutes a "reasonable opportunity" is determined in reference to legitimate penological objectives. *Gallagher v. Shelton*, 587 F.3d 1063, 1069 (10th Cir. 2009). The Tenth Circuit and its sister circuits have reviewed § 1983

---

[8] For further reference, *see Johnson v. Karnes*, 398 F.3d 868, 876 (6th Cir. 2005); *Rodriguez v. Plymouth Ambulance Serv.*, 577 F.3d 816, 827–28, 831–32 (7th Cir. 2009); *Farrow v. West,* 320 F.3d 1235, 1239 n.3 (11th Cir. 2003); *Dolihite v. Maughon By and Through Videon*, 74 F.3d 1027, 1044 (11th Cir. 1996); *Leeks v. Cunningham*, 997 F.2d 1330, 1333 n.3 (11th Cir. 1993).

[9] *See also Rice ex rel. Rice v. Corr. Med. Servs.*, 675 F.3d 650, 670–73 (7th Cir. 2012) (applying same standard and analysis to pretrial detainees).

claims against prison chaplains,[10] but most have not directly ruled on whether prison chaplains, employed as private contractors, are vulnerable to suit under § 1983. *See, e.g.*, *id.*

The Tenth Circuit has not ruled on whether prison chaplains are immune from suit under § 1983, but it also has not dismissed such a case under Rule 12(b)(1) based on what entity employed the chaplain. *See id.*; *Ralston*, 884 F.3d at 1065, n.5. In *Gallagher v. Shelton*, the court found that the plaintiff failed to state a claim against the chaplain when he alleged that his religious meal accommodation was not approved in a timely fashion. 587 F.3d at 1071. By contrast, in *Ralston*, the court inferred that the alleged outright denial of the plaintiff's request for a religious meal accommodation did state a claim for relief. 884 F.3d at 1065, n.5. Neither case contained any mention of the employment relationship between the prison chaplain and the state.[11] Based on this absence of any mention of an employment relationship, I infer that such facts are not material.

The Sixth Circuit has directly held that private prison chaplains are state actors, even when simply volunteering. *Phelps v. Dunn*, 965 F.2d 93, 102 (6th Cir. 1992). In *Phelps*, the volunteer chaplain accessed the prison more like an employee than a visitor and agreed to abide by prison policies and regulations—which included the policy to explicitly follow the Constitution and guarantee all inmates the right to practice their religion. *Id.* As such, he was prohibited from denying inmates access to religious services based on his own personal beliefs. *Id.* Therefore, the court held, when he was acting outside of his pastoral role, he was a state actor. *Id.*

---

[10] Although this case involves a county detention center, not a prison, and Plaintiff was a pretrial detainee at all times relevant to his Complaint, I employ the term "prison chaplain(s)" for simplicity and convenience throughout these Proposed Findings and Recommended Disposition.

[11] In *Gallagher v. Shelton,* the only phrase even remotely related to the chaplain's employment relationship is that he was referred to as the "[Norton Correctional Facility] Chaplain." *See* 587 F.3d at 1066. Similarly, in *Ralston*, the defendant chaplain "served as the Program Director and Chaplain for Denver Sheriff's Department." 884 F.3d at 1063. His "job responsibilities involve[d] 'coordinating, directing and monitoring the religious activities and services of inmates of all faiths represented by the inmate population,' which include[d] special diet requests." *Id.* None of these descriptors definitively indicate the employment relationship between the chaplains and the correctional facilities.

Defendants point to decisions from the Eighth and Ninth Circuits as supporting their position. *See* [Doc. 112] at 10, ¶ 9–10 (citing *Montano v. Hedgepeth*, 120 F.3d 844, 849–51 (8th Cir. 1997) and *Florer v. Congregation Pidyon Shevuyim, N.A.*, 639 F.3d 916, 925–26 (9th Cir. 2011), cert. denied, 132 S. Ct. 1000 (2012)). In *Montano*, the court found that a full-time state employee prison chaplain was not a state actor when engaging in inherently ecclesiastical functions. 120 F.3d at 849–51. Thus, when the chaplain excommunicated an inmate for violation of church law, he was not acting under color of state law. *Id.* Similarly, in *Florer*, the state contracted with a private Jewish religious organization to provide Jewish religious services to prisoners. 639 F.3d at 919. Florer, the inmate, alleged that he was deprived of his religious freedom by the defendants'[12] refusal to provide him with a Torah, a Jewish calendar, and a rabbi visit because the defendants determined he was not Jewish. *Id.* at 922–23. The Ninth Circuit found that to the extent that the defendants "refused to provide religious materials or services to Florer and refused to recognize him as Jewish, such determinations were ecclesiastical, not public, functions." *Id.* at 925–26. Although Defendants rely on these cases, both simply held that prison chaplains are not state actors when they are performing ecclesiastical functions, as opposed to performing any other duties typical of prison chaplains. Thus, the Eighth and Ninth Circuits' decisions in *Montano* and *Florer* are entirely consistent with the Sixth Circuit's decision in *Phelps*, where a volunteer prison chaplain was a state actor for purposes of § 1983. *See* 965 F.2d at 102.

Defendants urge reliance on an unpublished case from the U.S. District Court for the District of South Carolina. *See* [Doc. 112] at 9–10, ¶ 8 (citing and extensively explaining circumstances of *Walker v. Morse*, No. 18-3186, 2019 WL 6120459, at *4, 2019 U.S. Dist. LEXIS 200432 (D.S.C. Oct. 23, 2019)). In *Walker*, the court's analysis of whether privately employed

---

[12] The Jewish religious organization, its outreach program, and a rabbi were all defendants in the action.

prison chaplains can be state actors for purposes of § 1983 is conclusory and unpersuasive. In its entirety, it reads, "As an employee of a private ministry, Chaplain Morse is not a 'state actor' acting under color of state law so as to subject him to suit in a § 1983 action." *Id.* (citing *McGlothlin v. Murray*, 993 F. Supp. 389 (W.D. Va. 1997), *aff'd* 151 F.3d 1029 (4th Cir. 1998) (unpublished); *Lee v. Johnson*, No. 10-247, 2010 WL 3664060, at * 3 (W.D. Va. Sept. 17, 2010)).[13]

In *McGlothlin*, the district court held that a privately employed prison chaplain was not performing a governmental function and therefore was not a state actor, especially when his employer was not under contract with the state but was providing free services. *See* 993 F. Supp. at 398, 408–09.[14] On appeal, the Fourth Circuit affirmed "on the reasoning of the district court" in its unpublished opinion. *McGlothlin v. Murray*, 151 F.3d 1029, 1029 (4th Cir. 1998) (unpublished). However, a later disposition in *Lee* declined to follow *McGlothlin* and instead gave the prisoner the "benefit of the doubt" on the state actor issue, although it "remain[ed] skeptical" that the chaplain could be liable under § 1983, and dismissed the case on other grounds. *Lee v. Johnson*, 793 F. Supp. 2d 798, 801–02 (W.D. Va. 2011).

### 3. State Action in Other Prison Contexts

Beyond ruling on the narrow issue of chaplains as state actors, federal courts have interpreted *West* and other Supreme Court precedent to strongly imply that private prison companies are state actors for the purposes of § 1983 claims. *See, e.g.*, *Giron v. Corr. Corp. of*

---

[13] The only support the court provided for its legal conclusion was the reference to three cases—one published district court case, one unpublished Fourth Circuit opinion affirming the published lower court decision, and one unpublished district court case. *See Walker*, 2019 WL 6120459, at *4. Additionally, the court in *Walker* described *Lee* as "[f]inding that [a] privately employed chaplain providing chaplaincy services at [a] state prison [was] not a state actor for purposes of a § 1983 claim." *Id.* However, such is not an accurate description of the findings. In *Lee*, the court dismissed the claims against the chaplain "[b]ecause Lee fail[ed] to forecast evidence on which he could prove that [the chaplain] acted under state law so as to be subject to suit under § 1983." 2010 WL 3664060, at * 3. Failing to allege facts that a chaplain is a state actor is different from an affirmative finding that a prison chaplain cannot be a state actor for purposes of § 1983.

[14] The court placed a lot of weight on the organization's "volunteer" status in its reasoning, including a discussion of public policy considerations if all volunteer groups can become state actors. 993 F. Supp. at 409.

*Am.*, 14 F. Supp. 2d 1245 (D.N.M. 1998). In *Giron*, the court "conclude[d] that the government function doctrine applies in New Mexico when the state delegates the running of a prison to a private contractor." *Id.* at 1250. The court found a private corrections officer vulnerable to suit under § 1983 when he used the power delegated to him by the state to deprive the plaintiff of her constitutionally protected rights. *Id.* Beyond the Tenth Circuit, the Fifth Circuit joined the Sixth Circuit in finding § 1983 liability when private prisons or private prison employees violate the constitutional rights of inmates. *Rosborough v. Mgmt. & Training Corp.*, 350 F.3d 459, 460–61 (5th Cir. 2003) (citing *Skelton v. Pri–Cor, Inc.*, 963 F.2d 100, 102 (6th Cir. 1991)). The same analysis and conclusion extended to a private entity overseeing rehabilitation of prison inmates. *Flint ex rel. Flint v. Ky. Dep't of Corr.*, 270 F.3d 340, 351–52 (6th Cir. 2001); *Ams. United for Separation of Church and State v. Prison Fellowship Ministries, Inc.*, 509 F.3d 406, 422–23 (8th Cir. 2007).[15]

## Analysis

In this case, Defendants Beam and Stickles claim that they are not state actors, or were never "acting under color of state law," for purposes of § 1983, because they are not employees of DACDC but work for a private non-profit called Good News Jail and Prison Ministry. [Doc. 112] at 2, ¶ 2. I am not persuaded. In *West*, the Supreme Court held that when a state delegates portions of its constitutional duties to private actors, those private entities become vulnerable to suit under § 1983. 487 U.S. at 55–56. The contractual relationship, or lack thereof, does not affect the

---

[15] By contrast, Courts of Appeals have found no state action, regardless of contractual relationship with a private party, where the complaint alleged a deprivation arising out of employment-related decisions. *See, e.g.*, *Cunningham v. Southlake Ctr. for Mental Health, Inc.*, 924 F.2d 106, 107–08 (7th Cir. 1991) (finding no state action where contractor discharged employee). *See also Cornish v. Corr. Servs. Corp.*, 402 F.3d 545, 550–51 (5th Cir. 2005); *George v. Pacific-CSC Work Furlough*, 91 F.3d 1227, 1231–1232 (9th Cir. 1996). Similarly, a claim arising out of § 1983 was not available in the context of a private prison facility contracting with Immigration and Customs Enforcement (ICE) because § 1983 suits are not available generally against federal actors. *Doe v. United States*, 831 F.3d 309, 314–17 (5th Cir. 2016). Moreover, state action is more limited in under *Bivens* than § 1983. *Holly v. Scott*, 434 F.3d 287, 292–94 (4th Cir. 2006).

outcome of the state-actor analysis because the "state may not escape § 1983 liability by contracting out or delegating its obligation to provide medical care to inmates." *Id.* at 56; *see also Phelps*, 965 F.2d at 102. In *West* and its most direct progeny, the constitutional duty that had been delegated was the duty to provide adequate medical care to inmates in its custody. *See* 487 U.S. at 55–56. However, the same reasoning has been applied more broadly where the state delegates the operation of correctional and rehabilitation facilities to private actors, and its constitutional obligations follow. *See Giron*, 14 F. Supp. at 1245 (finding private prison officer vulnerable to suit under § 1983 for violation of inmate's constitutional right to bodily integrity); *see also Rosborough*, 350 F.3d at 460–61; *Skelton*, 963 F.2d at 102; *Flint*, 270 F.3d at 351–52; *Ams. United for Separation of Church and State*, 509 F.3d at 422–23.

Just as the state may choose to delegate its constitutional duty to provide medical care, it may also choose to delegate its duties regarding religious exercise. The Tenth Circuit has explicitly stated that prisoners maintain fundamental constitutional rights, including the right to freely exercise their religious beliefs. *See Makin*, 183 F.3d at 1209. It follows that inmates also retain the fundamental constitutional rights to be free from government establishment of religion and to enjoy equal protection under the law. S*ee* U.S. Const. amends. I, XIV. In *West*, the state delegated its constitutional duty to provide adequate medical care to a physician through a contract. 487 U.S. at 55–56. The state may choose to delegate other constitutional duties as well, *see, e.g.*, *Giron*, 14 F. Supp. at 1245, including its constitutional duty to provide inmates with a "reasonable opportunity," as determined in reference to legitimate penological objectives, to practice their religious beliefs, *see Gallagher v. Shelton*, 587 F.3d at 1069; *Makin*, 183 F.3d at 1209. Where a county jail provides chaplaincy services to inmates—either directly or indirectly through a religious organization—the state delegates its constitutional duties regarding freedom of religion

13

to the prison chaplain. *See infra* Standard Governing Claims Against Private Actors Under § 1983 (recounting multiple cases holding that the contractual relationship between the parties is not determinative).[16] In this sense, prison chaplains are very much like prison doctors, whether state employees or private contractors, because the state has delegated its duties—to provide adequate medical care and to provide a reasonable opportunity to practice religion—to a private entity, *see West*, 487 U.S. at 56, and therefore both can fairly be said to "represent the state" as required for a § 1983 claim, *Gallagher*, 49 F.3d at 1447.

Further, Tenth Circuit case law suggests that it would join the Sixth Circuit in finding that prison chaplains are state actors for the purposes of § 1983, regardless of any employment relationship with the state, or lack thereof. In *Gallagher v. Shelton* and *Ralston*, the allegations in the complaints were similar to, but less extreme than, the allegations in this case. *See* 587 F.3d at 1066; 884 F.3d at 1065, n.5.[17] Yet, the court made no mention of the chaplains' employment relationships and gave no indication that there was a question as to the chaplains being state actors. *See* 587 F.3d at 1071; 884 F.3d at 1065, n.5. Therefore, as noted above, I infer that such facts are not material, just as the contractual relationship in *West* was not material, *see* 487 U.S. at 56. For purposes of § 1983, like the doctor in *West* was a state actor, in this case, Defendants Beam and Stickles are state actors, in their roles as chaplains.[18]

Accordingly, no jurisdictional bar exists in this case. As discussed above, prison chaplains are state actors for purposes of § 1983 and thus subject-matter jurisdiction has been established.

---

[16] Following *West*, Courts of Appeals have applied the same analysis to pretrial detainees and postconviction inmates when evaluating § 1983 claims. *See Carl*, 763 F.3d at 595–98; *Rice*, 675 F.3d at 670–73. Therefore, I see no need to distinguish between the two for purposes of this analysis.

[17] In *Ralston*, the court noted that  it was "reasonable to infer" that the chaplain's outright denial of the plaintiff's request for religiously accommodated meals "substantially burdened his sincerely-held religious beliefs," as opposed to the chaplain's untimely approval in *Gallagher v. Shelton*, which did not quite rise to the level of substantial burden. 884 F.3d at 1065, n.5.

[18] Moreover, despite Defendants' arguments, they admit that they "provided" "public functions" at DACDC, [Doc. 112] at 15, ¶ 15, thereby satisfying one of the state actor tests, *see Johnson*, 293 F.3d at 1202–03.

To the extent Defendants argue that they are entitled to dismissal under Rule 12(b)(1) because they did not have control over the circumstances of which Plaintiff complains, such arguments are rejected. Defendants have failed to show that such control is required for subject-matter jurisdiction. Whether Defendants had control over the circumstances of which Plaintiff complains goes to questions of personal involvement and causation. *See Dodds v. Richardson*, 614 F.3d 1185, 1194–97 (10th Cir. 2010). As such, the issue of control is properly analyzed under a Rule 12(b)(6) motion to dismiss or a Rule 56 motion for summary judgment because it deals with questions of fact that go to the merits of the § 1983 claim. *See Franklin Sav. Corp. v. United States*, 180 F.3d 1124, 1129 (10th Cir. 1999).

Finally, Defendants argue in a single sentence that "[t]o the extent Plaintiff complains of Christian inmates receiving 'Bible Studies' services directly from Beam and Stickles through Good News, those actions are clearly ecclesiastical duties and not state actions, and thus they cannot be the basis for any claim against Beam and Stickles." [Doc. 112] at 11, ¶ 11. I agree that actions within the course of ecclesiastical functions are outside the scope of § 1983. However, to the extent that Defendants attempt to make any argument about their ecclesiastical duties, it is underdeveloped, and I reject it. Plaintiff has not complained about the theological content of a Bible study. He has alleged that Christian inmates received benefits that were unavailable to him as a Muslim. Furthermore, even if Defendants had developed their argument for dismissal based on their ecclesiastical functions, the ensuing inquiry would be fact-intensive and likely require a *Martinez* Report to issue before a ruling could fairly be made. *See Martinez*, 570 F.2d at 319–20. I now turn to the Rule 12(b)(6) portion of the Motion to Dismiss for failure to state a claim.

15

## Standard for Motions to Dismiss Under Rule 12(b)(6)

To survive a Rule 12(b)(6) motion to dismiss, a complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). With respect to a Rule 12(b)(6) motion, plausibility means that the plaintiff must plead facts that allow "the court to draw the reasonable inference that the defendant[s] [are] liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. "Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679. The factual allegations in the complaint against defendants "must be enough to raise a right to relief above the speculative level." *Christy Sports, L.L.C. v. Deer Valley Resort Co.*, 555 F.3d 1188, 1191 (10th Cir. 2009) (citation omitted); *see also Ridge at Red Hawk, L.L.C. v. Schneider*, 493 F.3d 1174, 1177 (10th Cir. 2007) ("[T]he mere metaphysical possibility that some plaintiff could prove some set of facts in support of the pleaded claims is insufficient; the complaint must give the court reason to believe that this plaintiff has a reasonable likelihood of mustering factual support for these claims.")

The complaint must provide "more than labels and conclusions" or merely "a formulaic recitation of the elements of a cause of action," because "courts are not bound to accept as true a legal conclusion couched as a factual allegation." *Twombly*, 550 U.S. at 555 (citation omitted). Indeed, "a well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable." *Id.* at 556. The court's role when reviewing "a Rule 12(b)(6) motion is not to weigh potential evidence that the parties might present at trial, but to assess whether the plaintiff's complaint alone is legally sufficient to state a claim for which relief may be granted." *Miller v. Glanz*, 948 F.2d 1562, 1565 (10th Cir. 1991). Furthermore, "the district court may not

16

look to . . . any . . . pleading outside the complaint itself, to refute facts specifically pled by a plaintiff, or to resolve factual disputes." *Swoboda v. Dubach*, 992 F.2d 286, 287 (10th Cir. 1993) (citing *Reed v. Dunham*, 893 F.2d 285, 287 n.2 (10th Cir. 1990); *Sampley v. Ruettgers*, 704 F.2d 491, 493 n.3 (10th Cir. 1983)).

Pro se pleadings are interpreted liberally, *see Swoboda*, 992 F.2d at 289, but must comply with the basic requirements of the Federal Rules of Civil Procedure, *see Yang v. Archuleta*, 525 F.3d 925, 927 n.1 (10th Cir. 2008) (quoting *Ogden v. San Juan Cnty.*, 32 F.3d 452, 455 (10th Cir. 1994)). Accordingly, notwithstanding the liberal construction provided to pro se filings, a pro se plaintiff is not relieved of the burden of alleging sufficient facts upon which to base a recognized legal claim. *Jenkins v. Currier*, 514 F.3d 1030, 1032 (10th Cir. 2008) (quoting *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991)). Finally, the moving party "bears the burden of proving the basis for dismissal." Clifford S. Fishman & Anne T. McKenna, *Jones on Evidence*, § 3:29.10. Shifting burdens; motions to dismiss, ¶ 1 (7th ed.) (updated May 2020).

## Analysis

Defendants fail to establish that the claims against them must be dismissed for failure to state a claim. Applying the proper standard to a Rule 12(b)(6) motion to dismiss, as outlined above, a court "may not look to . . . any . . . pleading outside the complaint itself, to refute facts specifically [pleaded] by a plaintiff, or to resolve factual disputes." *Swoboda*, 992 F.2d at 287. Thus, for the Rule 12(b)(6) portion of the analysis, I will not look beyond the Complaint to any evidence submitted.

### 1.  Personal Involvement in Plaintiff's Free Exercise Claim

First, Defendants point out that "Plaintiff must show that Stickles and Beam were personally involved in the alleged constitutional violations. *Foote v. Spiegel*, 118 F.3d 1416, 1423

17

(10th Cir. 1997)." [Doc. 112] at 11–12, ¶ 13; *see also id.* at 14, ¶ 17. I acknowledge that such is a requirement to survive a motion to dismiss in a § 1983 claim. However, upon review of Plaintiff's Complaint, it is clear that he has alleged personal involvement by Beam and Stickles. *See* [Doc. 100] at 6–7, 14, ¶¶ 90–93, 15–19, ¶¶ 102–03, 105, 108–10, 112, 114, 117–18, 124–25. Plaintiff alleges that they denied his request for religious items (a prayer rug, calendar, and clock) because of a policy over which Beam and Stickles have influence or control.[19] *See id.* at 6–7, 14, ¶¶ 90–93. Plaintiff also alleges that he repeatedly requested a religious meal accommodation for the month of Ramadan but that Beam and Stickles stated that they could not help. *Id.* Plaintiff further alleges that, after years of refusing to help, Stickles personally approached Plaintiff to advise him that he could now have a meal accommodation during Ramadan. *Id.* Plaintiff goes on to allege that after he signed up for the accommodation, he was served only ham and bread and told that he would be served the same meal for the entire month of Ramadan as part of the "religious accommodation."[20] *Id.* at 14, ¶¶ 94–101. It is well known that Muslims do not eat pork. In his allegations that name Chaplains Beam and Stickles, Plaintiff alleges that both chaplains had authority or control over their actions that caused the infringement on his constitutional rights. *See id.* Because these allegations must be taken as true at this stage of the proceedings, the Motion to Dismiss fails on this point.

---

[19] Hopefully, a *Martinez* Report will shed some light on whether Defendants had any say over such policies. Regardless, Plaintiff alleges that they participated in the making of such policies, and "a well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable." *Twombly*, 550 U.S. at 556.

[20] It is common knowledge that Muslims do not eat pork as part of their religious diet. Defendants' Motion to Dismiss, while disputing a lot of facts in the Complaint, does not dispute their knowledge of this dietary restriction. *See* [Doc. 112]. Indeed, if Plaintiff had repeatedly talked with the prison chaplains about his request for a religious diet, as he alleges that he did, then it seems reasonable to infer that Defendants were aware that Plaintiff could not eat pork. *See Swoboda*, 992 F.2d at 289 (interpreting pro se pleadings liberally); *Iqbal*, 556 U.S. at 663 ("Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense."). Thus, it is a fair inference, based on the allegations, that at least Stickles was involved in some fashion with the DACDC's meal choice for the month of Ramadan, and a *Martinez* Report would be helpful to determine the facts in this matter.

Next, Defendants argue that "Plaintiff . . . alleges that [Defendants] substantially burdened his right to freely exercise his sincerely held beliefs. (Complaint at ¶ 138). The factual assertions made in support of this claim concern the alleged refusal to provide religious items, information[,] and or diet necessary to practice his religious beliefs. (*Id.* at ¶ 139)." [Doc. 112] at 12, ¶ 14. In the very words of this contention, Defendants admit that Plaintiff pleaded facts to support his assertion. *Id.* Rather than attack the sufficiency of the alleged facts, as is required to succeed in a Rule 12(b)(6) motion, Defendants argue that they have no authority to approve or deny certain requests from inmates for religious items or accommodations. *Id.* Because this contention disputes a factual allegation in the Complaint, which must be accepted as true at this stage, it will not be considered under the Rule 12(b)(6) analysis. Moreover, the Tenth Circuit has already concluded that Plaintiff has stated a Free Exercise claim, finding that his "Ramadan-meal claim, therefore, plausibly alleged a constitutional violation." *Khan v. Barela*, 808 F. App'x 602, 615–16 (10th Cir. 2020). Thus, Defendants' attempt to rely on *Gallagher v. Shelton* to suggest that Plaintiff's allegations are insufficient is futile. *See* [Doc. 112] at 12, ¶ 14.

### 2. Plaintiff's Claims Under the Establishment Clause and Equal Protection Clause

Defendants argue that "Plaintiff has not shown that Stickles and Beam have: (1) promoted particular religious views to Plaintiff's detriment; or (2) selectively enforced any policies based on religion." *Id.* at 13, ¶ 16 (restating standards from *Brown v. Gilmore*, 258 F.3d 265, 274 (4th Cir. 2001) and *United States v. Batchelder*, 442 U.S. 114, 125 n.9 (1979)). Defendants broadly contend that Plaintiff has not alleged the facts necessary to survive the Motion to Dismiss on the Establishment and Equal Protection claims.

Plaintiff alleges multiple facts in paragraphs 102–124 of the Complaint to support his claims, and I will summarize them in the following paragraphs. *See* [Doc. 100]. Plaintiff alleges

that Defendants "market[ed]" for Christian volunteers and made no attempt to recruit volunteers of other religions, such as Islam. *Id.* at 15, ¶¶ 102–03. Christian inmates were called for Bible studies at least twice weekly; there was nothing similar for Muslims. *Id.* at ¶ 104. Defendants only approved one Muslim volunteer but 45 Christian volunteers. *Id.* at ¶ 105. Plaintiff was able to meet with the Muslim volunteer five times over the course of his four years at DACDC; Christian volunteers were available over 200 times during the same time period. *Id.* at 16, ¶ 106. During one of his visits with the Muslim volunteer, Plaintiff was handcuffed to a chair for the meeting; inmates were never handcuffed for meetings with Christian volunteers. *Id.* at ¶ 107. Plaintiff alleges that the employee who cuffed him said the order to do so came "from the top." *Id.*

Plaintiff alleges that Defendants maintained a religious library that only contained Christian literature. *Id.* at ¶ 108. Plaintiff had to use familial funds to gain access to a Quran because Defendants refused to keep non-Christian religious texts in the library, but inmates could access Christian texts free of charge. *Id.* at ¶ 109. Christian inmates had multiple opportunities to watch films at "the Chapel," but there were no similar opportunities for Muslim inmates. *Id.* at 18, ¶ 122.

Plaintiff further alleges that Christian volunteers were permitted to freely access the facility, including by entering the housing unit, but the sole Muslim volunteer, after being vetted by Defendants, was never permitted to enter the housing unit. *Id.* at 17, ¶ 112. When Christian volunteers entered the housing unit to preach, which happened over 200 times in Plaintiff's four years at DACDC, an employee would mute the television and demand all inmates present pay attention to the sermon. *Id.* at ¶ 113. Three times, Defendants Beam and Stickles were specifically involved in forcing Plaintiff to pay attention to an evangelical sermon. *Id.* at ¶¶ 113–14. When Plaintiff complained about these events, he was threatened with sanctions. *Id.* at ¶ 115. Plaintiff

alleges that Defendants Beam and Stickles directly, and through public support, forced him to be evangelized at such sessions. *Id.* at ¶¶ 116–18. Christian inmates were routinely permitted to hold nightly prayer circles and completely disregard lock-down orders; Muslim inmates were never given such privileges. *Id.* at 18, ¶ 123. Finally, Plaintiff alleges that Defendants Beam and Stickles provided free religious Christmas cards but offered no religiously neutral options. *Id.* at ¶ 124.

Accepting all the pleaded facts, outlined above, as true, Defendants have failed to show that the Complaint does not "contain[] sufficient factual matter . . . to state a claim to relief that is plausible on its face," *Iqbal*, 556 U.S. at 678. The facts, as pleaded in the Complaint, tend to show that Defendants Beam and Stickles promoted particular religious views to Plaintiff's detriment. *See Brown*, 258 F.3d at 274. The alleged facts also tend to show that Defendants selectively enforced policies based on religion. *See Batchelder*, 442 U.S. at 125.

Defendants proffer a list of allegations that they contend Plaintiff would need to make in order to survive a Rule 12(b)(6) motion to dismiss. *See* [Doc. 112] at 13, ¶ 16. However, the list merely provides examples of allegations that might support a §1983 claim. For example, Defendants state, "Plaintiff . . . has admitted that he was allowed to meet with [a Muslim] volunteer on multiple occasions." *Id.* The argument seems to be that Plaintiff could not maintain a § 1983 claim unless he were to allege that he was never permitted to see **any** Muslim volunteer during his incarceration. That is incorrect, both logically and legally.

Furthermore, Defendants contend that Plaintiff's allegations fail to take into account several factors that purportedly undermine his argument. *See* [Doc. 112] at 13, ¶ 16. I will address each in turn. First, Defendants claim that Plaintiff fails to consider "the overwhelming majority of religious classes and meetings at DACDC are performed by volunteers," *id.*; however, Plaintiff's Complaint seems to indicate that he knows this and accounts for it, *see* [Doc. 100] at 15–16,

21

¶¶ 102–07. Second, "all religious books and texts are donated by outside individuals to DACDC, and DACDC determines whether they should be allowed inside DACDC." [Doc. 112] at 13, ¶ 16. However, this statement carries no weight here because it is an additional "fact" asserted by Defendants, and it contests facts alleged by Plaintiff in the Complaint, *see* [Doc. 100] at 16, ¶¶ 108–09, which I am obligated to accept as true at this stage, *see Iqbal*, 556 U.S. at 678. Third, Defendants assert that Plaintiff fails to consider that "Qurans and other Islamic texts have been present in the religious library." [Doc. 112] at 13, ¶ 16. Again, this assertion directly contests a fact alleged by Plaintiff in the Complaint. [Doc. 100] at 16, ¶¶ 108–09. As such, it is not considered in the analysis of a Rule 12(b)(6) motion. I must accept as true Plaintiff's allegation that there was no Quran or other Islamic text in the library. *See id.* Finally, Defendants contend that Plaintiff failed to consider that he "was allowed to receive a Quran from his family," [Doc. 112] at 13, ¶ 16, a fact Plaintiff acknowledges, [Doc. 100] at 16, ¶ 109. Here again, Plaintiff need not necessarily allege that he was not permitted to have a Quran in the facility in order to survive a motion to dismiss.

Finally, to the extent that Defendants Beam and Stickles personally conducted Bible studies with inmates and did not lead discussions for other faith groups, *see* [Doc. 100] at 16, ¶¶ 110–11, I agree with Defendants' characterization of such activities as "ecclesiastical duties which are not state actions and cannot form the basis for Plaintiff's causes of action," [Doc. 112] at 15, ¶ 15.[21] However, such conduct by Defendants does not form the basis of any cause of action in the Complaint. *See* [Doc. 100].[22] Next, I will briefly review Defendants' arguments that were improper under the Rule 12(b)(6) analysis.

---

[21] Paragraph "15" on page 15 is incorrectly numbered in the Motion to Dismiss [Doc. 112].
[22] Plaintiff does not allege that Chaplains Beam or Stickles refused, for example, to allow him to take communion. If the chaplains had excluded Plaintiff, as a non-Christian, from communion, such would likely fall within their ecclesiastical authority and not be subject to § 1983 liability.

### Summary Judgment: Converting Rule 12(b)(6) Motion to Dismiss

Generally, a court must convert a motion to dismiss into a motion for summary judgment when matters outside the complaint are relied upon because a motion to dismiss considers only the conduct alleged in the complaint, whereas a motion for summary judgment considers the evidence (or lack thereof) upon which the allegations are based. *Utah Gospel Mission v. Salt Lake City Corp.*, 425 F.3d 1249, 1253–54 (10th Cir. 2005); *Bell v. Fur Breeders Agric. Coop.*, 348 F.3d 1224, 1230 (10th Cir. 2003). "Rule 12(b) provides that if matters outside the complaint are presented to and not excluded by the court, then the court should treat the motion as one for summary judgment under Rule 56 and not as a motion to dismiss." *Miller*, 948 F.2d at 1565 (citing Fed. R. Civ. P. 12(b)). A district court's review of "mere argument contained in a memorandum" does not require conversion to a summary judgment motion. *Ohio v. Peterson, Lowry, Rall, Barber & Ross*, 585 F.2d 454, 457 (10th Cir. 1978). When conversion to a Rule 56 motion is proper, "the trial court should give the parties notice of the changed status of the motion," which allows the parties to present all relevant evidence. *Id.* Summary judgment under Rule 56 "is warranted only if 'there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.'" *Yousuf v. Cohlmia*, 741 F.3d 31, 37 (10th Cir. 2014) (quoting Fed. R. Civ. P. 56(a)).

### Analysis

The portions of the Motion to Dismiss that must be converted to a motion for summary judgment should be denied as premature. Although typically, trial courts must give both parties notice of such conversions to motions for summary judgment, *see Peterson*, 585 F.2d at 457, in this case, such notice is not needed where the motion will be denied as premature. A renewed

motion for summary judgment may be submitted after the issuance of a *Martinez* Report. *See* Fed. R. Civ. P. 56; *Martinez*, 570 F.2d at 319–20 (affirming the propriety and necessity of such reports).

In their Motion to Dismiss, Defendants ask the Court to consider evidence outside the four corners of the Complaint. *See* [Doc. 112] at 18–66. This evidence includes: affidavits of Defendants Beam and Stickles, resumes of Defendants Beam and Stickles, and multiple contracts between Good News Jail and Prison Ministry and Doña Ana County. *See id.* All of this evidence could be considered to assess the scope of Defendants' duties as chaplains at DACDC and perhaps the amount of influence they may have over DACDC policies. Such factors are relevant to the merits of Plaintiff's § 1983 claims. *See* [Doc. 112] at 12, ¶ 14. However, Plaintiff genuinely disputes the material facts Defendants offer. *See* [Doc. 100] at 14, ¶¶ 90–93, 15, ¶¶ 102–03, 17, ¶¶ 113–14. This makes a summary judgment ruling improper. *See Yousuf*, 741 F.3d at 37. This Court has not yet had the opportunity to order a *Martinez* Report to allow for adequate discovery. *See* Fed. R. Civ. P. 56. Thus, the motion for summary judgment should be denied as premature.

Finally, in the Motion to Dismiss, Defendants dispute additional allegations made by Plaintiff: (1) "[a]ll religious books and texts are donated by outside individuals to DACDC, and DACDC determines whether they should be allowed inside DACDC"; (2) "Qurans and other Islamic texts have been present in the religious library"; (3) the alleged Christmas cards were donated, and secular alternatives were available. [Doc. 112] at 13, ¶ 16, 14, ¶ 17. These facts are material to the Complaint, and there remains a genuine dispute as to which are true. Thus, summary judgment is not warranted at this time.

## Conclusion

Defendants have failed to show that the claims against them must be dismissed. Therefore, I recommend that the presiding judge deny the Motion and allow the claims against Defendants to

proceed for the following reasons. First, Defendants Beam and Stickles, in their roles as DACDC

chaplains, are state actors for purposes of § 1983 because the state delegated its constitutional

duties regarding freedom of religion to them, and thus the Rule 12(b)(1) portion of the motion

should be denied. *See West*, 487 U.S. at 55–56; *Makin*, 183 F.3d at 1209; *Ralston*, 884 F.3d

at 1065, n.5. Second, Defendants have failed to show that Plaintiff has not stated sufficient facts

to make his claims to relief plausible, and therefore, the Rule 12(b)(6) portion of the motion should

be denied. *Iqbal*, 556 U.S. at 678. Finally, the portions of the Rule 12(b)(6) motion that warrant

conversion to a Rule 56 motion are premature because Plaintiff has not had the opportunity for

discovery through a *Martinez* Report. *See* Fed. R. Civ. P. 56; *Martinez*, 570 F.2d at 319–20

(affirming the propriety and necessity of such reports).

**IT IS THEREFORE RESPECTFULLY RECOMMENDED** that the Motion to Dismiss

[Doc. 112] be DENIED.

---

**THE PARTIES ARE FURTHER NOTIFIED THAT WITHIN FOURTEEN DAYS OF SERVICE** of a copy of these Proposed Findings and Recommended Disposition, they may file written objections with the Clerk of the District Court pursuant to 28 U.S.C. § 636(b)(1). **A party must file any written objections with the Clerk of the District Court within the 14-day period if that party wants to have appellate review of the proposed findings and recommended disposition.  If no objections are filed, no appellate review will be allowed.**

---

_____
**STEPHAN M. VIDMAR**
**United States Magistrate Judge**