IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

**ERIK KHAN,**

    **Plaintiff,**

v.                                                                                                    No. 15-cv-1151 MV/SMV

**CHRIS BARELA, BOARD OF COUNTY
COMMISSIONERS OF DOÑA ANA COUNTY,
ARAMARK CORPORATION,
BILL STICKLES, and DAVID BEAM,**

    **Defendants.**[1]

## MAGISTRATE JUDGE'S
## PROPOSED FINDINGS AND RECOMMENDED DISPOSITION

THIS MATTER is before me on the Rule 12(b)(6) Motion to Dismiss [Doc. 123] and Memorandum of Law [Doc. 124] (together, "Motion"), filed by Defendant Aramark Correctional Services, LLC ("Aramark") on September 25, 2020. Plaintiff's response was docketed on October 19, 2020.[2] [Doc. 129]. Defendant replied on November 16, 2020. [Doc. 134]. The Honorable Martha Vázquez, United States District Judge, referred this matter to me for analysis and a recommended disposition. [Doc. 13]. Having considered the parties' submissions, the record, and the relevant law, and being otherwise fully advised in the premises, I find that Defendant has failed to show that the claims against it must be dismissed. Therefore, I recommend that the Motion be denied and the claims against Defendant proceed. I do so for three reasons. First, Plaintiff's

---

[1] This caption reflects the Defendants listed in the Third Amended Complaint, except that Plaintiff substituted Defendant David Beam for the John Doe Defendant on June 24, 2020. [Docs. 100, 109]. Moreover, Defendants Bill Stickles and David Beam were dismissed as parties on November 6, 2020. [Doc. 133]. Finally, in its Motion to Dismiss, Defendant Aramark states that its proper name is "Aramark Correctional Services, LLC." [Doc. 123].

[2] Under the prison mailbox rule, Plaintiff's response is considered filed on October 14, 2020, when he deposited it with the institution's first-class mail system. [Doc. 129] at 9. *See Houston v. Lack*, 487 U.S. 266 (1988).

allegations, if true, are enough to show that Defendant Aramark is a state actor in its role regulating mail at the Doña Ana County Detention Center ("DACDC"). Second, Plaintiff provided sufficient facts to adequately allege that a policy or custom of Defendant Aramark was the moving force behind the alleged constitutional violation. Thus, Plaintiff has stated a claim against Defendant Aramark under § 1983. Finally, Plaintiff's prayer for relief is not part of the cause of action and therefore should not be considered on this Motion to Dismiss for failure to state a claim under Rule 12(b)(6).

### A. BACKGROUND

Plaintiff filed his Third Amended Complaint ("Complaint") pro se on May 1, 2020. [Doc. 100]. He seeks damages for violations of his constitutional rights while detained at DACDC over the course of four years. *Id.* He brings these claims under 42 U.S.C. § 1983 against multiple Defendants, one of which is Defendant Aramark. *Id.* In its Motion to Dismiss, Defendant argues that Plaintiff's Complaint fails to state a claim under Fed. R. Civ. P. 12(b)(6) because (1) as a private contractor delivering mail in a county correctional facility, it did not act "under color of state law"; (2) Plaintiff did not sufficiently allege that it acted "under color of state law"; (3) Plaintiff did not sufficiently allege that its policy or custom caused a constitutional violation; and (4) Plaintiff's request for punitive damages should be struck from the Complaint. [Doc. 124].

When viewed in the light most favorable to the nonmovant, Plaintiff's Complaint asserts the following: DACDC contracted with Aramark to "implement, direct, organize[,] and otherwise manage all inmate mail services" at DACDC. [Doc. 100] at 4, ¶ 15. In its position with DACDC, Aramark "promulgated, adopted, enacted, implemented[,] and/or possessed responsibility for" the policy that did not allow inmates access to hardcover books, newspapers, and newspaper clippings.

*Id.* at 4, ¶ 15, 6, ¶ 29. Additionally, Aramark, along with other Defendants, would not permit inmates to review the facility's written mail policies. *Id.* at 6–7, ¶ 30.

Plaintiff further alleges that he asked both a DACDC employee and an Aramark employee about how he could obtain information that was only available in hardcover books and newspapers. *Id.* at 7, ¶¶ 33–36, 8, ¶ 42. The DACDC employee explained to Plaintiff that "Defendants Barela, Board, and Aramark have a joint policy, practice[,] or custom to not allow any hardcover books or newspapers to enter the DACDC in any form or from any source." *Id.* at ¶ 34. The Aramark employee also explained that the three Defendants "created the joint policy" and that he could not deviate from it in any way, even through reasonable alternatives, such as delivering newspaper clippings or books with the covers removed. *Id.* at 7–8, ¶¶ 35–36. Because of the policy, an Aramark employee did not deliver to Plaintiff a hardcover book on the U.S. Sentencing Guidelines, his USA Today subscription, or a newspaper clipping from his mother. *Id.* at 8–9, ¶¶ 37, 39–45.

### B. MOTIONS TO DISMISS UNDER RULE 12(B)(6)

To survive a Rule 12(b)(6) motion to dismiss, a complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). With respect to a Rule 12(b)(6) motion, plausibility means that the plaintiff must plead facts that allow "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. "Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679. The factual allegations in the complaint against a defendant "must be enough to raise a right to relief above the speculative level." *Christy Sports, L.L.C. v. Deer Valley*

*Resort Co.*, 555 F.3d 1188, 1191 (10th Cir. 2009) (citation omitted); *see also Ridge at Red Hawk, L.L.C. v. Schneider*, 493 F.3d 1174, 1177 (10th Cir. 2007) ("[T]he mere metaphysical possibility that some plaintiff could prove some set of facts in support of the pleaded claims is insufficient; the complaint must give the court reason to believe that this plaintiff has a reasonable likelihood of mustering factual support for these claims.")

The complaint must provide "more than labels and conclusions" or merely "a formulaic recitation of the elements of a cause of action," because "courts are not bound to accept as true a legal conclusion couched as a factual allegation." *Twombly*, 550 U.S. at 555 (citation omitted). Indeed, "a well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable." *Id.* at 556. The court's role when reviewing "a Rule 12(b)(6) motion is not to weigh potential evidence that the parties might present at trial, but to assess whether the plaintiff's complaint alone is legally sufficient to state a claim for which relief may be granted." *Miller v. Glanz*, 948 F.2d 1562, 1565 (10th Cir. 1991).

Pro se pleadings are interpreted liberally, *see Swoboda*, 992 F.2d at 289, but must comply with the basic requirements of the Federal Rules of Civil Procedure, *see Yang v. Archuleta*, 525 F.3d 925, 927 n.1 (10th Cir. 2008) (quoting *Ogden v. San Juan Cnty.*, 32 F.3d 452, 455 (10th Cir. 1994)). Accordingly, notwithstanding the liberal construction provided to pro se filings, a pro se plaintiff is not relieved of the burden of alleging sufficient facts upon which to base a recognized legal claim. *Jenkins v. Currier*, 514 F.3d 1030, 1032 (10th Cir. 2008) (quoting *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991)). Finally, the moving party "bears the burden of proving the basis for dismissal." Clifford S. Fishman & Anne T. McKenna, *Jones on Evidence*, § 3:29.10. Shifting burdens; motions to dismiss, ¶ 1 (7th ed.) (updated May 2020).

### C. STANDARD TO STATE A CLAIM UNDER § 1983

Section 1983 of Title 42 of the United States Code provides that anyone "who, under color of [state law] . . . subjects, or causes to be subjected, any . . . person within the jurisdiction [of the United States] to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law." 42 U.S.C. § 1983. Section 1983 creates only the right of action; it does not create any substantive rights; substantive rights must come from the Constitution or federal statute. *See Spielman v. Hildebrand*, 873 F.2d 1377, 1386 (10th Cir. 1989). Rather, § 1983 authorizes an injured person to assert a claim for relief against a person who, acting under color of state law, violated the claimant's federally protected rights. To state a claim upon which relief can be granted under § 1983, a plaintiff must allege: "(1) a violation of rights protected by the federal Constitution or created by federal statute or regulation, (2) proximately caused (3) by the conduct of a 'person' (4) who acted under color of [state law]." *Summum v. City of Ogden*, 297 F.3d 995, 1000 (10th Cir. 2002); *see also West v. Atkins*, 487 U.S. 42, 48 (1988).[3]

---

[3] Technically, a plaintiff's status, as either a pretrial detainee or a postconviction inmate, determines the legal framework under which the claims are adjudicated. Pretrial detainees have a Fourteenth Amendment right not to be punished because they have not been adjudicated guilty. *Khan v. Barela*, 808 F. App'x 602, 606 (10th Cir. 2020) (citing *Bell v. Wolfish*, 441 U.S. 520, 535, 538–39 (1979)). Postconviction inmates have an Eighth Amendment right not to be cruelly or unusually punished. *Wolfish*, 441 U.S. at 528. However, when evaluating the underlying constitutional violations in § 1983 claims, the same analysis has been applied to pretrial detainees and postconviction inmates. *See Carl v. Muskegon Cnty.*, 763 F.3d 592, 595–98 (6th Cir. 2014); *Rice ex rel. Rice v. Corr. Med. Servs.*, 675 F.3d 650, 666 (7th Cir. 2012) (explaining that "courts still look to Eighth Amendment case law in addressing the claims of pretrial detainees, given that the protections of the Fourteenth Amendment's due process clause are at least as broad as those that the Eighth Amendment affords to convicted prisoners"). Therefore, I see no need to distinguish between pretrial detainees and postconviction inmates for purposes of the following analysis.

### D. STANDARD TO STATE A CLAIM UNDER § 1983 AGAINST PRIVATE ACTORS[4]

The U.S. Supreme Court has clarified that the "under color of state law" requirement for a § 1983 claim and the "state action" standard as required in a Fourteenth Amendment claim, are identical. *Lugar v. Edmondson Oil Co., Inc.*, 457 U.S. 922, 929 (1982). Thus, the two terms are used interchangeably. *See id.* In *Lugar*, the Court held that, for a private actor to be liable to suit under § 1983, "the conduct allegedly causing the deprivation of a federal right [must] be fairly attributable to the State." *Id.* at 937. Therefore, "the only proper defendants in a Section 1983 claim are those who 'represent [the state] in some capacity, whether they act in accordance with their authority or misuse it.'" *Gallagher v. "Neil Young Freedom Concert"*, 49 F.3d 1442, 1447 (10th Cir. 1995) (quoting *Nat'l Collegiate Athletic Ass'n v. Tarkanian*, 488 U.S. 179, 191 (1988)).[5] A contract between the state and a private entity is not enough to establish state action; rather, "the question is whether the function performed has been 'traditionally the exclusive prerogative of the State.'" *Rendell-Baker v. Kohn*, 457 U.S. 830, 842 (1982) (quoting *Jackson v. Metropolitan Edison Co.*, 419 U.S. 345, 353 (1974)). Federal courts have analyzed this standard in a number of different contexts.

#### 1. *West v. Atkins*: The State May Delegate Its Constitutional Duties

In *West*, the Supreme Court found that a private doctor who contracted with a state prison to provide medical services to inmates was vulnerable to suit under § 1983 as a state actor because the state had delegated to him its constitutional duty to provide medical services. 487 U.S.

---

[4] The legal analysis discussed in the following sections is nearly identical to the analysis that I employed when discussing privately employed prison chaplains in a previous Proposed Findings and Recommended Disposition in this case. *See* [Doc. 127].

[5] *See also Johnson v. Rodrigues*, 293 F.3d 1196, 1202–03 (10th Cir. 2002) (outlining the Tenth Circuit's approach to the question of state action in § 1983 claims: (1) the public function test, (2) the nexus test, (3) the symbiotic relationship test, and (4) the joint action test).

6

at 55–56. "The State bore an affirmative obligation to provide adequate medical care to West [an inmate];[6] the State delegated that function to respondent Atkins; and respondent voluntarily assumed that obligation by contract." *Id.* at 56.[7] Some circuits have gone a step further and found medical providers to be state actors, even absent a contractual relationship with the state, when they assumed the state's constitutional duty by providing medical care to prisoners. *See Conner v. Donnelly*, 42 F.3d 220, 225–26 (4th Cir. 1994); *Carl v. Muskegon Cnty.*, 763 F.3d 592, 595–98 (6th Cir. 2014) (quoting *West*, 487 U.S. at 56) (applying same standard for pretrial detainees and stating "[a] state may not escape § 1983 liability by contracting out or delegating its obligation to provide medical care to inmates").[8]

### 2. Rationale of *West* Extended to Private Prison Companies Generally

Following the holding and rationale in *West*, multiple federal courts have concluded that private prison companies are state actors for purposes of § 1983 claims. *See, e.g.*, *Giron v. Corr. Corp. of Am.*, 14 F. Supp. 2d 1245 (D.N.M. 1998). In *Giron*, the court "conclude[d] that the government function doctrine applies in New Mexico when the state delegates the running of a prison to a private contractor." *Id.* at 1250. The court found a private corrections officer vulnerable to suit under § 1983 when he used the power delegated to him by the state to deprive the plaintiff of her constitutionally protected rights. *Id.* Beyond the Tenth Circuit, the Fifth Circuit joined the

---

[6] The Court also noted that West was not free to leave the confines of the prison to find his own doctor, even if he had wanted to. *West*, 487 U.S. at 44. *See also Cunningham v. Southlake Ctr. for Mental Health, Inc.*, 924 F.2d 106, 109 (7th Cir. 1991) (noting that a key component of the rationale in *West* was that "an inmate must rely entirely on prison authorities to treat his medical needs").

[7] Since the Supreme Court's nearly unanimous decision in *West* in 1988, numerous Courts of Appeals have continued to follow the precedent in the context of medical staff providing services for inmates. *See Harrison v. Ash*, 539 F.3d 510, 521 (6th Cir. 2008); *Belbachir v. Cnty. of McHenry*, 726 F.3d 975, 978 (7th Cir. 2013); *Craig v. Floyd Cnty., Ga.*, 643 F.3d 1306, 1310 (11th Cir. 2011).

[8] *See also Rice*, 675 F.3d 650, 670–73 (7th Cir. 2012) (applying same standard and analysis to pretrial detainees).

Sixth Circuit in finding § 1983 liability when private prisons or private prison employees violate the constitutional rights of inmates. *Rosborough v. Mgmt. & Training Corp.*, 350 F.3d 459, 460–61 (5th Cir. 2003) (citing *Skelton v. Pri–Cor, Inc.*, 963 F.2d 100, 102 (6th Cir. 1991)). The same analysis and conclusion extended to private entities overseeing rehabilitation of inmates. *Flint ex rel. Flint v. Ky. Dep't of Corr.*, 270 F.3d 340, 351–52 (6th Cir. 2001); *Ams. United for Separation of Church and State v. Prison Fellowship Ministries, Inc.*, 509 F.3d 406, 422–23 (8th Cir. 2007).[9]

### 3. Rationale of *West* Extended to Companies Providing Food Services in Prisons

Interpreting Tenth Circuit caselaw and applying the rationale of *West*, a federal court in the District of Utah concluded that a private company was a state actor for purposes of § 1983 when it contracted with the state to provide food services at a jail. *Price v. Suarez*, No. 09-0051, 2011 WL 635225, at *3, 2011 U.S. Dist. LEXIS 13937, at *9–10 (D. Utah Feb. 11, 2011). In *Price*, "the [j]ail had contracted out to [the company] the exclusive right to provide and operate food services" at the jail. *Id.* Following *West*, the court reasoned that the state "had a constitutional obligation to provide inmates with 'nutritionally adequate' [and safe food]"; the state "delegated that obligation to [the company], and [the company] voluntarily assumed the obligation by contract." *Id.* (quoting *Ramos v. Lamm*, 639 F.2d 559, 571 (10th Cir. 1980)). With identical reasoning, a federal court in the Western District of Arkansas found Aramark (as the defendant in that case) to be a state actor

---

[9] By contrast, Courts of Appeals have found no state action, regardless of a contractual relationship between a state entity and a private party, where the complaint alleged a deprivation arising out of employment-related decisions. *See, e.g.*, *Cunningham v. Southlake Ctr. for Mental Health, Inc.*, 924 F.2d 106, 107–08 (7th Cir. 1991) (finding no state action where contractor discharged employee); *see also Cornish v. Corr. Servs. Corp.*, 402 F.3d 545, 550–51 (5th Cir. 2005); *George v. Pacific-CSC Work Furlough*, 91 F.3d 1227, 1231–32 (9th Cir. 1996). Similarly, a claim arising out of § 1983 was not available in the context of a private prison facility contracting with Immigration and Customs Enforcement because § 1983 suits are not available against federal actors. *Doe v. United States*, 831 F.3d 309, 314–17 (5th Cir. 2016). Moreover, state action is more limited under *Bivens* than § 1983. *Holly v. Scott*, 434 F.3d 287, 292–94 (4th Cir. 2006).

when it was the food services provider in a detention facility. *Wilmoth v. Aramark Corr. Servs., LLC*, No. 10-5048, 2012 WL 4472147, at *5, 2012 U.S. Dist. LEXIS 190347 (W.D. Ark. Aug. 16, 2012); *see also Ingram v. Hall*, 2010 WL 1727865, at *7 (M.D. Tenn. Mar. 31, 2010) ("As an initial matter, [d]efendant [private company], as a corporation that contracts with the State to provide food to inmates at the [jail], is considered a state actor for purposes of § 1983."); *DeJesus v. Aramark Food Serv., Inc.*, No. 13-5734, 2014 WL 144732, at *3, n.2 (E.D. Pa. Jan. 14, 2014) ("In cases similar to the one at issue here, several courts in this district have considered Aramark to have acted under color of state law for purposes of § 1983 by performing the traditional government function of providing food service at a prison.").[10]

---

[10] Defendant argues that "a private defendant, such as Aramark, is normally not amenable to liability" under § 1983 and provides a string cite to multiple unpublished district court decisions to support its position. [Doc. 124] at 7. Upon closer examination of many of the cited cases, it is obvious the matter is not so clear. For example, a district court in California dismissed a case against a private corporation because the "[p]laintiff [did] *not allege* that [the d]efendant was acting under color of state law." *Lauricella v. Cordis Corp.*, No. 07-2016, 2007 WL 1462460, at *1, 2007 U.S. Dist. LEXIS 39551 (N.D. Cal. May 18, 2007) (emphasis added). But that order was vacated less than two weeks later when the plaintiff clarified that he was not filing suit under § 1983. *Lauricella*, 2007 WL 1545853, at *1 (N.D. Cal. May 29, 2007).

     Defendant also points to an unpublished order from the District of Kansas that is not available on WestLaw or Lexis. [Doc. 124] at 7 (citing and providing as an exhibit *Strope v. Cline*, No. 07-3254 (D. Kan. Mar. 18, 2010)). In *Strope*, the court dismissed a § 1983 claim against two individual Aramark employees, under Rule 12(b)(6), in relevant part because it found "no evidence of a relationship between" the state and the employees "that supports a finding that [their] conduct is attributable to a state agency or that the state controlled [their] actions." No. 07-3254, at *6. However, the nonbinding order in *Strope* is distinguishable from the present case because Plaintiff has alleged a relationship between the state and Defendant Aramark at DACDC. *See infra* Analysis.

     Additionally, Defendant argues that a district court in Colorado dismissed it (Aramark) from a § 1983 lawsuit because "it did not act under color of state law where it merely provided linen service at the jail." [Doc. 124] at 7 (citing *Young v. Martinez*, No. 07-1222, 2008 WL 793575, 2008 U.S. Dist. LEXIS 22415 (D. Colo. Mar. 21, 2008)). Yet, in *Young*, the court simply found that the plaintiff had not *alleged* a relationship between the defendant and the state, but the court did not rule directly on whether the defendant's conduct could be "fairly attributable to the state." *Young*, 2008 WL 793575, at *10. Thus, *Young* is not particularly instructive in this case where Plaintiff has alleged a relationship between the state and Defendant Aramark.

     Finally, Defendant cites *Fews v. Ever Com Phone System*, No. 00-2559, 2000 WL 1610734, 2000 U.S. Dist. LEXIS 15804 (N.D. Cal. Oct. 23, 2000) because in that case, the court dismissed the complaint and found no state action. In *Fews*, the *entire* analysis of the state-actor issue reads, "As a private corporation, Ever Com does not act under color of state law." *Id.* at *1. Such a cursory analysis does not take any caselaw on the subject into account and thus is not persuasive.

### E. STANDARD TO STATE A CLAIM UNDER § 1983 AGAINST EMPLOYERS: POLICY OR CUSTOM REQUIREMENT

It is well established that a municipality can be held liable under § 1983 for acts of its employees only if an official "policy or custom" caused the constitutional injury. *Monell v. New York City Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978).[11] Multiple federal courts have extended the *Monell* doctrine beyond municipalities to private entities. *Dubbs v. Head Start, Inc.*, 336 F.3d 1194, 1216 (10th Cir. 2003) (citing several cases).[12] Thus, under current Tenth Circuit precedent, private companies cannot be held vicariously liable under § 1983 for the tortious acts of their employees. *Id.*[13] To hold a private entity liable under § 1983 for the actions of its employees, a plaintiff must allege that the defendant "caused the constitutional violation by instituting" a policy or custom "that was the 'direct cause' or 'moving force' behind the constitutional violations." *Young v. Martinez*, No. 07-1222, 2008 WL 793575, at *10, 2008 U.S. Dist. LEXIS 22415 (D. Colo. Mar. 21, 2008) (quoting *Dubbs*, 336 F.3d at 1215). Courts have

---

[11] *See also City of Oklahoma City v. Tuttle*, 471 U.S. 808, 820 (1985); *Pembaur v. City of Cincinnati*, 475 U.S. 469, 480–85 (1986).

[12] In *Dubbs*, the court cited cases from multiple circuit courts. 336 F.3d at 1216 (citing *Dickerson v. Leavitt Rentals*, 995 F. Supp. 1242, 1247 (D. Kan. 1998), *aff'd*, 153 F.3d 726 (10th Cir. 1998), *cert. denied*, 525 U.S. 1110 (1999); *DeVargas v. Mason & Hanger-Silas Mason Co.*, 844 F.2d 714, 722–23 (10th Cir. 1988); *Jackson v. Illinois Medi-Car Inc.*, 300 F.3d 760, 766 (7th Cir. 2002); *Burke v. North Dakota Dep't of Corr. & Rehab.*, 294 F.3d 1043, 1044 (8th Cir. 2002); *Austin v. Paramount Parks, Inc.*, 195 F.3d 715, 729 (4th Cir. 1999); *Harvey v. Harvey*, 949 F.2d 1127, 1129–30 (11th Cir. 1992); *Rojas v. Alexander's Dep't Store*, 924 F.2d 406, 408–09 (2d Cir. 1990)). *See also Rouster v. County of Saginaw*, 749 F.3d 437, 453 (6th Cir. 2014); *Chatham v. Davis*, 839 F.3d 679, 685–86 (7th Cir. 2016). Aramark cites to district court cases supporting the same proposition. [Doc. 124] at 7, 8, 10 (citing *Moore v. Vendor/Aramark Corrs. Food Servs.*, 2011 WL 13257343, at *1, 2011 U.S. Dist. LEXIS 78893, at *3 (N.D. Ill. July 20, 2011); *James v. Correct Care Sols.*, No. 13-0019, 2013 WL 5730176, at *9, 2013 U.S. Dist. LEXIS 15170 (S.D.N.Y. Oct. 21, 2013); *Mora v. Camden Cnty.*, No. 09-4183, 2010 WL 2560680, at *10, 2010 U.S. Dist. LEXIS 61800 (D.N.J. June 21, 2010)).

[13] I am bound by the current Tenth Circuit precedent as outlined in *Dubbs*. Nevertheless, it is worth noting that the Seventh Circuit recently re-examined the reasoning, in *Monell*, for limiting the vicarious liability of municipalities under § 1983 and questioned whether the *Monell* doctrine should continue to limit the liability of private corporations in the same way. *Shields v. Illinois Department of Corrections*, 746 F.3d 782, 789–95 (7th Cir. 2014) (citing *Adickes v. S.H. Kress & Co.*, 398 U.S. 144 (1970); *Richardson v. McKnight*, 521 U.S. 399, 412 (1997); *Wyatt v. Cole*, 504 U.S. 158, 167–68 (1992)).

explained that a "policy" is made "where the decisionmaker possesses final authority to establish municipal policy with respect to the action ordered." *Young*, 2008 WL 793575, at *9 (quoting *Pembaur v. City of Cincinnati*, 475 U.S. 469, 481 (1986) (plurality opinion)). Similarly, a custom "has not been formally approved by an appropriate decisionmaker" but is "so widespread as to have the force of law." *Bd. of Cnty. Comm'rs of Bryan Cnty., Okla. v. Brown*, 520 U.S. 397, 404 (1997).[14]

### F. ANALYSIS

#### 1. Aramark Is a State Actor.

In this case, Defendant Aramark argues that it is not a state actor, or was never "acting under color of state law," for purposes of § 1983. Even though it contracted with DACDC to provide mail services,[15] Defendant argues that the contract alone is insufficient to transform it into a state actor.[16] [Doc. 124] at 7–8. I am not persuaded. "Inmates have a First Amendment right to receive information while in prison to the extent the right is not inconsistent with prisoner status or the legitimate penological objectives of the prison." *Jacklovich v. Simmons*, 392 F.3d 420, 426 (10th Cir. 2004) (citations omitted). This right to receive information circumscribes prison mail[17]

---

[14] *See also Natale v. Camden Cnty. Corr. Facility*, 318 F.3d 575, 583–84 (3d Cir. 2003).

[15] Defendant states its contract with DACDC was "to provide facilities and ancillary services." [Doc. 123] at 1. Accepting the allegations in Plaintiff's Complaint as true, and for the purposes of the present Proposed Findings and Recommended Disposition, the analysis focuses solely on Defendant's role providing mail services.

[16] For pleading purposes, the Tenth Circuit has already concluded that Plaintiff "plausibly alleged a First Amendment violation" with his allegations regarding the prohibition on hardcover books, newspaper subscriptions, and newspaper clippings. *Khan*, 808 F. App'x at 606. Thus, Defendant does not argue that Plaintiff failed to state a cognizable constitutional violation under the First Amendment. *See* [Doc. 124]. As such, an analysis of the First Amendment issue is not necessary here. However, Defendant Aramark argues that it is not a state actor, and the Tenth Circuit did not address that specific issue. Therefore, I address it here.

[17] Although this case involves a county detention center, not a prison, I employ the term "prison mail" for simplicity and convenience. In this analysis, the term "prison mail" encompasses items that inmates would receive through the mail system, such as books, newspapers, and letters.

11

policies. *See Thornburgh v. Abbott*, 490 U.S. 401, 408, 414–18 (1989); *Khan*, 808 F. App'x at 606 (both discussing the standard from *Turner v. Safley*, 482 U.S. 78, 89–91 (1987)).[18]

Where the Constitution guarantees inmates a fundamental right, it also places a duty on the state to provide the protected right to those whom it has incarcerated, and the state may delegate such duty to a private actor. *See West*, 487 U.S. at 57. In *West*, the Supreme Court held that when a state delegates portions of its constitutional duties to private actors, those private actors become vulnerable to suit under § 1983 because the "state may not escape § 1983 liability by contracting out or delegating its obligation to provide medical care to inmates." *Id.* at 56. In *West* and its most direct progeny, the constitutional duty that had been delegated was the duty to provide adequate medical care to inmates in its custody. *See* 487 U.S. at 55–56. However, the same reasoning has been applied more broadly where the state delegates the operation of correctional and rehabilitation facilities to private actors, and its constitutional obligations follow. *See Giron*, 14 F. Supp. at 1245.[19]

Just as the state may delegate many other constitutional duties, it may also delegate its duty to create or maintain prison mail policies that do not unconstitutionally infringe on inmates' First Amendment right to receive information. As discussed above, the state may delegate its duty to provide adequate medical care, *West*, 487 U.S. at 55–56, to operate an entire prison facility, *Giron*, 14 F. Supp. at 1245, and to provide food services to inmates, *Price*, 2011 WL 635225, at *3. Its constitutional duties regarding prison mail are no exception. *See Thornburgh*, 490 U.S. at 408. Where a county jail provides and regulates mail services for inmates, either directly or

---

[18] *See also Turner*, 482 U.S. at 89 ("[W]hen a prison regulation impinges on inmates' constitutional rights, the regulation is valid if it is reasonably related to legitimate penological interests.").

[19] *See also Rosborough*, 350 F.3d at 460–61; *Skelton*, 963 F.2d at 102; *Flint*, 270 F.3d at 351–52; *Ams. United for Separation of Church and State*, 509 F.3d at 422–23.

12

indirectly through a contract with a private entity, the state delegates its constitutional duties regarding prison mail. *See West*, 487, U.S. at 56.[20] Where the state has delegated its constitutional duties—to provide adequate medical care or to provide reasonable access to information—to a private entity, *see West*, 487 U.S. at 56, that entity can fairly be said to "represent the state" as required for a § 1983 claim, *Gallagher*, 49 F.3d at 1447.[21] Accepting Plaintiff's allegations as true, and without weighing the potential evidence, *see Miller*, 948 F.2d at 1565, DACDC delegated its First Amendment duties regarding prison mail to Defendant Aramark. Thus, Defendant has failed to establish that it cannot be a state actor as a matter of law.

Moreover, Plaintiff has adequately alleged a relationship between Defendant Aramark and the state, such that it is plausible that Aramark can fairly be said to "represent the state" in its role at DACDC. *See id.*; *Iqbal*, 556 U.S. at 678. The Complaint alleges that Aramark contracted with DACDC to "implement, direct, organize[,] and otherwise manage all inmate mail services" and that it "was acting under color of New Mexico State law at all times material to [the] Complaint." [Doc. 100] at 4, ¶¶ 15, 16. It further alleges that both an Aramark employee and a DACDC employee told Plaintiff that Aramark worked with Barela and the Board to create the "joint policy" that determines what mail inmates can receive. *Id.* at 7–8, ¶¶ 34–36. Construing the pro se Complaint liberally, *see Swoboda*, 992 F.2d at 289, I find that Plaintiff did more than formulaically recite allegations that Defendant acted under color of state law for purposes of § 1983, *see*

---

[20] *See also supra* Standard to State a Claim Under § 1983 Against Private Actors (collecting multiple cases holding that a state may delegate its constitutional duties to private entities).

[21] Moreover, it is worth noting that Aramark admits that it is a "traditional state function" to decide what type of mail inmates can receive. [Doc. 124] at 9. Defendant Aramark asserts that the power to make such decisions "remained with" DACDC in this case. *Id.* This argument disputes facts that Plaintiff alleged in the Complaint, [Doc. 100] at 4–8, and therefore is not appropriate under Rule 12(b)(6) but rather should be brought under Rule 56 at a later stage in the proceedings. *See Twombly*, 550 U.S. at 556 ("[A] well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable.").

*Twombly*, 550 U.S. at 555. Plaintiff adequately alleged that Defendant was a state actor at all times material to the Complaint.[22]

### 2. Plaintiff Has Adequately Alleged a Policy or Custom.

Defendant Aramark also argues that Plaintiff did not adequately allege that it had a policy or custom that was the moving force behind the alleged violation. [Doc. 124] at 9 (citing *Natale v. Camden Cnty. Corr. Facility*, 318 F.3d 575, 583–84 (3d Cir. 2003)).[23] Aramark is correct that to state a § 1983 claim against a private entity, based on the actions of its employees, a plaintiff must allege that a policy or custom of the private-entity defendant caused the constitutional violation. *See Dubbs*, 336 F.3d at 1215. However, in this case, the Complaint asserts that Aramark "possessed responsibility for" the policy that did not allow inmates access to hardcover books, newspapers, and newspaper clippings. [Doc. 100] at 4, ¶ 15, 6, ¶ 29. The Complaint also asserts that as a result of the joint policy, an Aramark employee did not deliver to Plaintiff a hardcover book, his USA Today subscription, or a newspaper clipping from his mother. *Id.* at 8–9, ¶¶ 37, 39–45. It further alleges that a DACDC employee told Plaintiff that "Defendants Barela, Board, and Aramark have a *joint policy* . . . to not allow any hardcover books or newspapers" in the facility and that an Aramark employee explained that the three Defendants "created the joint policy." [Doc. 100] at 7–8, ¶¶ 34–36 (emphasis added). Thus, Plaintiff did more than formulaically recite allegations that Defendant's policy or custom caused the violation. *See Twombly*, 550 U.S. at 555.

---

[22] To the extent Defendant attempts to argue that it is not a state actor in this case because it has no control over the decisions regarding allowable mail, such argument disputes facts pleaded in the Complaint. [Doc. 124] at 9; [Doc. 100] at 7–8. Therefore, it is not appropriate under Rule 12(b)(6) but rather should be brought under Rule 56 at a later stage in the proceedings. *See Twombly*, 550 U.S. at 556.

[23] Defendant also attempts to argue that it had no control over the policies regarding allowable mail. [Doc. 124] at 9. However, this argument disputes facts that Plaintiff alleged in the Complaint, [Doc. 100] at 7–8, and therefore is not appropriate under Rule 12(b)(6) but rather should be brought under Rule 56 at a later stage in the proceedings. *See Twombly*, 550 U.S. at 556. Thus, I have construed Defendant's argument as one proper under Rule 12(b)(6).

14

Accordingly, I find that such is "enough to raise a right to relief above the speculative level." *See Christy Sports, L.L.C.*, 555 F.3d at 1191. Plaintiff adequately alleged that Defendant acted "under color of state law" and that "a policy or custom" of Defendant caused the constitutional violation; therefore, Plaintiff's claims against Defendant should not be dismissed.

### 3. Plaintiff's Prayer for Punitive Damages Should Not Be Struck.

The Tenth Circuit has noted that "[i]t is well settled that the prayer for relief is no part of the cause of action." *Daniels v. Thomas*, 225 F.2d 795, 797 (10th Cir. 1955). District courts within the Tenth Circuit have explained this concept further. A prayer for relief is a remedy not a claim, and "parties are entitled only to such relief as the pleadings support." *Cassidy v. Millers Cas. Ins. Co. of Texas*, 1 F. Supp. 2d 1200, 1214 (D. Colo. 1998). "Thus, the only issue on a motion dismiss is whether the claim as stated would give the plaintiff a right to any relief, rather than to the particular relief demanded." *Id.* (citations omitted). Similarly, "whether [punitive] damages are recoverable is not a proper subject for adjudication in a Rule 12(b)(6) motion, as the prayer for relief is not a part of the cause of action." *Douglas v. Miller*, 864 F. Supp. 2d 1205, 1220 (W.D. Okla. Mar. 30, 2012) (citing *Hardeman v. Stewart*, 195 Fed. App'x 706, 707 (10th Cir. 2006)); *see also* 5 Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1255 (3d ed. 2004) ("The sufficiency of a pleading is tested by the Rule 8(a)(2) statement of the claim for relief[,] and the demand for judgment is not considered part of the claim for that purpose, as numerous cases have held.").[24]

---

[24] To the extent that Defendant intended its objections to Plaintiff's prayer for punitive damages be construed as a motion to strike under Rule 12(f), such does not alter the analysis. *See Federal Practice and Procedure* § 1380 ("Rule 12(f) also is designed to reinforce the requirement in Rule 8(d) . . . that pleadings be simple, concise, and direct. However, as the cases make clear, it is neither an authorized nor a proper way to procure the dismissal of all or a part of a complaint . . . ."). District courts frequently treat improper Rule 12(f) motions as Rule 12(b)(6) motions to dismiss. *See id.* n.7.

15

The authorities cited by Aramark simply do not show that Plaintiff's prayer for punitive damages should be struck at this stage. Defendant cited a New Mexico Court of Appeals case and a case from the Illinois Appellate Court. [Doc. 124] at 10–11 (citing *Gonzales v. Sansoy*, 1984-NMCA-133, ¶¶ 6–13, 103 N.M. 127, 130–31; *Landers-Scelfo v. Corp. Off. Sys.*, 827 N.E.2d 1051, 1057 (Ill. App. Ct. 2005)). *Gonzales* is arguably instructive to the extent that it explains the relevant mental state required to support a finding for punitive damages. 1984-NMCA-133, ¶¶ 6–13. However, in *Gonzales*, the court examined whether the evidence was sufficient to support a jury's award of punitive damages in a medical malpractice case, not whether demands for punitive damages should be struck from the plaintiff's complaint through a motion to dismiss in a case brought under § 1983. *Id.* ¶ 8. *Landers-Scelfo* is even less helpful. Defendant cites *Landers-Scelfo* for the proposition that "[a] pleading that merely paraphrases the elements of a cause of action in conclusory terms is not sufficient." 827 N.E.2d at 1057. Such is simply a restatement, by nonbinding authority, of the *Twombly* and *Iqbal* standard when reviewing a Rule 12(b)(6) motion to dismiss. *See Twombly*, 550 U.S. at 555. The case does not discuss whether demands for punitive damages should be struck from the plaintiff's prayer for relief when reviewing a motion to dismiss. Accordingly, Defendant's request to strike Plaintiff's prayer for relief in the form of punitive damages should be denied.

## Conclusion

Defendant has failed to show that the claims against it must be dismissed. Therefore, I recommend that the Motion be denied and the claims against Defendant proceed for the following reasons. First, Plaintiff's allegations, if true, are enough to show that Defendant Aramark is a state actor in its role regulating mail at DACDC. *See West*, 487 U.S. at 55–56; *Thornburgh*, 490 U.S.

at 408; *Turner*, 482 U.S. at 89–91. Second, Plaintiff provided sufficient facts to adequately allege that a policy or custom of Defendant Aramark was the moving force behind the alleged constitutional violation. *See Dubbs*, 336 F.3d at 1216. Thus, Plaintiff has stated a claim against Defendant Aramark under § 1983. Finally, Plaintiff's prayer for relief is not part of the cause of action and therefore should not be considered on a motion to dismiss under Rule 12(b)(6). *See Daniels*, 225 F.2d at 797.

**IT IS THEREFORE RESPECTFULLY RECOMMENDED** that the Motion to Dismiss [Docs. 123, 124] be DENIED.

**THE PARTIES ARE FURTHER NOTIFIED THAT WITHIN FOURTEEN DAYS OF SERVICE** of a copy of these Proposed Findings and Recommended Disposition, they may file written objections with the Clerk of the District Court pursuant to 28 U.S.C. § 636(b)(1). **A party must file any written objections with the Clerk of the District Court within the 14-day period if that party wants to have appellate review of the proposed findings and recommended disposition. If no objections are filed, no appellate review will be allowed.**

_____
**STEPHAN M. VIDMAR**
**United States Magistrate Judge**